**Manjinder KAUR, Petitioner,**

v.

**Alberto R. GONZALES, Attorney General, Respondent.**

**No. 04–72908.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 15, 2006.

Filed Jan. 17, 2007.

Silver, District Judge, dissented with opinion.

Garish Sarin, Esq., Los Angeles, CA, for Petitioner.

James C. Kilbourne, Esq., DOJ—U.S. Department of Justice, Environment & Natural Resources Division, Washington, DC, Ronald E. LeFevre, Chief Counsel, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, for Respondent.

Before: HAWKINS and BERZON, Circuit Judges, and SILVER *, District Judge.

### MEMORANDUM **

Manjinder Kaur, a native and citizen of India, petitions for review of a Board of Immigration Appeals order. That order summarily affirmed an immigration judge's ("IJ") order denying Kaur's applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252. We review for substantial evidence both an agency's adverse credibility determination and a fact-based determination that a petitioner has failed to demonstrate eligibility for asylum. See Gui v. INS, 280 F.3d 1217, 1225 (9th Cir.2002); Ochave v. INS, 254 F.3d 859, 861–62 (9th Cir.2001). Employing that

---

* The Honorable Roslyn O. Silver, United States District Judge for the District of Arizona, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

standard of review, we grant Kaur's petition for review and remand for findings concerning a well-founded fear of future persecution.

## I.

■ Substantial evidence does not support any of the IJ's enumerated reasons for making an adverse credibility determination concerning Kaur.

■ First, contrary to the IJ's finding, Kaur never testified inconsistently about the extent of her brother's political activities. While Kaur testified that her brother had been arrested twice, and a letter she produced from the All India Sikh Student Federation (AISSF) referenced a third arrest, this discrepancy does not amount to substantial evidence supporting an adverse credibility determination. The evidence concerns Kaur's brother, not Kaur. That the author of an AISSF letter, written in 1999, was apparently aware of a "denied" arrest which Kaur did not report is not substantial evidence that she was lying. An additional, secret arrest could have occurred after she last saw her brother, or even after she left India in 1996.

■ Next, substantial evidence does not support the IJ's finding that Kaur testified inconsistently and incompletely about her rape. Kaur's 1998 statement that she became unconscious *"when"* she was raped does not contradict her 2003 testimony that she "passed out" *"after"* the rape was over. Further, contrary to the IJ's accusation that her testimony was "vague," Kaur sufficiently detailed the circumstances of her rape.

■ Particularly troubling is the IJ's exhortation, made in 2003, that Kaur should have felt at ease discussing her rape because both the IJ and government's attorney were women. Kaur's own attorney, however, was a man. As we have recognized, women from a traditional society are likely to be uncomfortable discussing the details of a rape in front of a man, and, as the transcript shows, Kaur quite evidently was. *See, e.g., Paramasamy v. Ashcroft*, 295 F.3d 1047, 1053 (9th Cir.2002). The IJ's finding that Kaur's testimony about her rape was inconsistent or vague, therefore, cannot stand.

■ Similarly, the IJ's findings that Kaur testified evasively about her rape when she covered her face and that Kaur should have reported her rape to the police cannot support the adverse credibility determination. Credibility determinations based on demeanor receive "special deference" on review, *see Singh–Kaur v. INS*, 183 F.3d 1147, 1151 (9th Cir.1999), but are not conclusive, *see Paredes–Urrestarazu v. INS*, 36 F.3d 801, 818 n. 20 (9th Cir.1994). In this instance, the facts compel the conclusion that Kaur covered her face not because she was acting evasively but because she was ashamed. Kaur's failure to report the rape to the police, when it was the police who raped her, also does not detract from her credibility. *See Baballah v. Ashcroft*, 367 F.3d 1067, 1078 (9th Cir. 2004) ("[W]hen the government is responsible for the persecution ... no inquiry into whether a petitioner reported the persecution to police is necessary.").

■ The final reason for the IJ's adverse credibility determination was that Kaur testified inconsistently about the manner in which she traveled to and entered the United States. This ground does not go to the heart of Kaur's claim and, as a result, does not constitute substantial evidence for disbelieving her entire testimony. *See Chen v. Ashcroft*, 362 F.3d 611, 617 (9th Cir.2004). The inconsistencies the IJ seized upon—for example, whether Kaur destroyed her passport while en route to Canada or upon her

arrival in that country or whether Kaur traveled with or without her agent—are minor and have no bearing on the merits of Kaur's asylum claim.

Because no substantial evidence supports any of the IJ's reasons for an adverse credibility determination, it cannot stand.

## II.

█ Taking Kaur's testimony as credible, we conclude that the IJ also erred in denying Kaur's petition based on her alternative finding that Kaur failed to prove her identity. *See Farah v. Ashcroft,* 348 F.3d 1153, 1156 (9th Cir.2003) (indicating that an asylum applicant bears the burden of proving her identity); *Chebchoub v. INS,* 257 F.3d 1038, 1042 (9th Cir.2001) (explaining that this burden may be met with credible testimony alone). Although she did not need to, Kaur bolstered her testimony about her identity with several corroborating documents: a notarized birth certificate; a letter from her father identifying her, her family, her arrests, and her mistreatment by police; a letter from the village leader further verifying her troubles with local police; a birth certificate for her brother, which verified that the two shared the same parents; and a school record identifying her and her brother. *See Kataria v. INS,* 232 F.3d 1107, 1114 (9th Cir.2000) (holding that corroborating documents to prove one's identity are only necessary when the trier of fact has made an explicit adverse credibility determination). The existence of such documents, coupled with Kaur's credible testimony, undermines the IJ's other reason for doubting Kaur's identity—namely, her argument that Kaur should have called on her American relatives to testify and, in doing so, to confirm her identity.

The IJ's finding on this point, thus, cannot stand.

## III.

█ In yet another alternative finding, the IJ denied Kaur's asylum application because she found that Kaur failed to rebut the presumption that she had firmly resettled in Canada. The IJ erroneously, however, placed the burden of disproving firm resettlement on Kaur. *Maharaj v. Gonzales,* 450 F.3d 961, 973 (9th Cir.2006) (holding that, under 8 C.F.R. § 208.15, the government bears the burden of proving firm resettlement, either through direct evidence of an offer for permanent resettlement or through circumstantial evidence triggering a presumption of permanent resettlement). Kaur consistently testified that she spent no more than two or three days in Canada, and the government failed to produce any evidence to the contrary. In fact, all that the government was able to produce after asking Canadian immigration officials to search their records was evidence of a different Manjinder Kaur—one whose fingerprints and photograph did not match those of the Manjinder Kaur in this case.

█ On appeal, the government argues that Kaur is to blame for *its* failure to prove *her* firm resettlement because she refused to sign a consent form that, the government alleges, would have allowed Canadian authorities to perform a more extensive records search. We have, however, never held that an asylum applicant has a duty to cooperate with immigration officials' efforts to prove firm resettlement. Such a rule effectively shifts the burden that *Maharaj* so clearly places on the government. The government's position is further weakened by the fact that Kaur's attorney told the IJ that he independently asked Canadian officials for whatever information they might have on his client. Finally, the government has not explained

what other information Canadian officials would have been able to produce had Kaur given her consent. We already know that the Canadian database contains records of the "wrong" Manjinder Kaur; the government has given us no reason to believe that another search would have produced evidence related to the "right" one.

In short, the IJ erroneously denied Kaur's petition based on her finding that Kaur firmly resettled in Canada before coming to the United States.

## IV.

■ Next, the IJ erred in alternatively finding that Kaur's application should be denied because she failed to prove a nexus between her rape and one of the her asserted grounds for asylum: imputed political opinion.[1] Proof of a persecutor's motives can be established through circumstantial evidence such as the timing of the persecution or the victim's ties to individuals that the persecutor generally regards as political enemies. *See Lopez–Galarza v. INS*, 99 F.3d 954, 959–960 (9th Cir.1996). Kaur credibly testified that she was targeted because of her brother's political activities with the AISSF and that her own two arrests by Punjabi police directly coincided with AISSF rallies. The IJ erred therefore in finding that Kaur failed to prove any nexus between her persecution and her imputed political opinion.

## V.

■ Because Kaur established past persecution, she is entitled to a presumption of a well-founded fear of future persecution. *See Ndom v. Ashcroft*, 384 F.3d 743, 756 (9th Cir.2004); 8 C.F.R.

§ 208.16(b)(1)(i). It is not clear from the IJ's opinion whether she credited Kaur with this presumption. We therefore remand this case for reconsideration of the well-founded fear question. *See INS v. Orlando Ventura*, 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002). In so doing, we remind the IJ that findings related to a well-founded fear of future persecution can be based neither on blanket speculation—such as the IJ's conjecture that because Kaur was now married and a mother, Punjabi police would be less likely to harass her—nor on country condition reports alone. *See Popova v. INS*, 273 F.3d 1251, 1259 (9th Cir.2001) (holding that the government must introduce "individualized" evidence to rebut an applicant's grounds for a well-founded fear of future persecution, and cannot rely on "[i]nformation about general changes in the country" alone).

**PETITION GRANTED; REMANDED.**

SILVER, District Judge, dissenting:

The majority's decision is dependent on rejecting the IJ's adverse credibility determination. Under the appropriate standard of review, I believe the IJ made sufficient findings to support the credibility determination. Accordingly, I dissent.

We review an adverse credibility determination for substantial evidence. This standard is meant to be "extremely deferential." *Ghaly v. INS*, 58 F.3d 1425, 1431 (9th Cir.1995). In fact, we "must uphold the [IJ's] findings unless the evidence presented would *compel* a reasonable finder of fact to reach a contrary result." *Singh–Kaur v. INS*, 183 F.3d 1147, 1149–50 (9th Cir.1999). If an IJ cites multiple grounds

---

1. The IJ's opinion never discusses Kaur's other stated asylum claim—that she was persecuted on account of her Sikh faith.

in support of an adverse credibility determination and "one of the identified grounds is supported by substantial evidence and goes to the heart of [a] claim ... we are bound to accept the IJ's adverse credibility finding." *Wang v. INS,* 352 F.3d 1250, 1259 (9th Cir.2003). Our case law also requires that we give " 'special deference' to a credibility determination that is based on demeanor." *Singh–Kaur,* 183 F.3d at 1151. An appropriate application of these deferential standards leads to the conclusion that the petition should be denied.

In this case, the IJ cited to a wide variety of grounds in support of the adverse credibility finding. Under Ninth Circuit precedent, at least one of those grounds was invalid because it did not go to the heart of Kaur's case. But at least two of the grounds cited by the IJ go to the heart of Kaur's case and were sufficient to support an adverse credibility finding.

The majority acknowledges that there was a discrepancy involving the number of times Kaur's brother had been arrested. Kaur testified that her brother had been arrested twice but she also produced a letter from the All India Sikh Student Federation stating her brother had been arrested three times. Because Kaur claims she was targeted and persecuted as a result of her brother's political activities, facts surrounding those activities go to the heart of her case. The majority concludes that the discrepancy regarding the number of arrests "is not substantial evidence that [Kaur] was lying. An additional, secret arrest could have occurred after [Kaur] last saw her brother, or even after [Kaur] left India in 1996." Slip op. at 3. The majority's reconciliation of the conflict is reasonable, but the facts do not *compel* the conclusion the majority reaches. Under the majority's approach, it is unclear when a discrepancy such as this could support an adverse credibility finding. It takes little imagination to come up with a reasonable explanation for this, or any similar, discrepancy. I do not, however, believe it is our place to do so. A discrepancy existed in a portion of Kaur's evidence, the IJ believed this discrepancy showed Kaur was not being truthful, and the majority errs by excusing the discrepancy with a factually unsubstantiated conclusion about why the discrepancy exists.

Second, the majority agrees that demeanor evidence is entitled to "special deference," but rejects the IJ's demeanor determinations without detailing how it reaches its conclusion. In her decision, the IJ found that "when [Kaur] was asked to give details in (sic) regarding the rape incident by the Government, [Kaur] did not give any detailed description and simply covered her face with her hand and appears to be evasive, non-responsive, and did not provide any detailed description of the alleged rape." The majority rejects this opinion of her demeanor and credibility and believes "the facts compel the conclusion that Kaur covered her face not because she was acting evasively but because she was ashamed." Slip op. at 4. There is no mention of any facts in the record to support this conclusion. There are, however, multiple instances in the record where Kaur provided evasive or non-responsive answers regarding the circumstances of her rape. When an IJ's credibility decision is based on demeanor, and the record has clear support for that determination, special deference is appropriate. Cf. *Jibril v. Gonzales,* 423 F.3d 1129, 1137 (9th Cir.2005) ("Where the record does not obviously show that the petitioner was evasive or unresponsive, our precedent instructs us not to accord deference to the IJ's demeanor finding . . . .").

The only support in the record that I have been able to locate for the majority's conclusion that Kaur was too ashamed to discuss the alleged rape is the following exchange between the attorney for the service and Kaur.

Attorney: So tell me how [the rape] occurred.

Kaur: What can I tell you? You know what rape is.

Attorney: Well, ma'am, there are different kinds of rape. Tell me how he raped you.

Kaur: I feel ashamed.

. . . .

Attorney: So please can you tell use how the rape happened, or how did it occur?

Kaur: He beat me a lot and then he put me on the floor, and he removed my clothes. And afterwards, and then he raped me, after removing my clothes.

Attorney: Well, did he rape you with an object or with his, or with what?

Kaur: Now you don't know how the rape is done?

Such questions could have embarrassed Kaur or she could have been evasive. The IJ was in the room and able to observe Kaur during this testimony to determine credibility. IJs have the advantage of observing petitioners as they testify. An "IJ has an opportunity to make a first-person evaluation of all of the subtly conveyed factors that, together, can be evidence of a petitioner's credibility." *Jibril,* 423 F.3d at 1137. IJs have the further advantage of observing "many people in Petitioner's position" and we should defer to their ability to "differentiate between the usual level of anxiety [or evasiveness] and Petitioner's behavior." *Singh–Kaur,* 183 F.3d at 1151. I would give the deference required and defer to the IJ's evaluation of Kaur's demeanor.

I respectfully dissent.