**ZI LIN CHEN, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 02–73673.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 13, 2004.

Filed March 30, 2004.

James B. Macy, Sacramento, CA, for the petitioner.

Margaret K. Taylor, United States Department of Justice, Civil Division, Washington, DC, for the respondent.

Before: ALARCÓN, BEEZER, and FLETCHER, Circuit Judges.

ALARCÓN, Circuit Judge:

Zi Lin Chen petitions for review of the Board of Immigration Appeals's ("BIA") decision to deny her application for asylum and withholding of removal under 8 U.S.C. § 1231(b)(3)(A), and Article 3 of the United Nations' Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("Convention Against Torture"), opened for signature Feb. 4, 1985, S. Treaty Doc. No. 100–20, at

20 (1988), 23 I.L.M. 1027, 1028 (1984). We have jurisdiction over this timely filed petition under 8 U.S.C. § 1252(a) and 8 C.F.R § 208.18(e). We grant the petition for review and hold that the Immigration Judge's ("IJ") adverse credibility findings were not supported by substantial evidence. We remand for further proceedings to determine whether Mrs. Chen has established eligibility for asylum, withholding of removal, and relief under the Convention Against Torture in light of her credible testimony.

I

Mrs. Chen entered this country from China on June 8, 2001, when she was intercepted and detained at San Francisco International Airport. She is a thirty-three-year-old citizen of the People's Republic of China. Mrs. Chen was born in Ho Yi Village, Nian Chon County in Fujian Province on September 25, 1971. She married Chun Yu Zheng on September 26, 1991 when she was twenty years old.

On her application for asylum, Mrs. Chen alleged that she has a nine-year-old son living in China, and that she was pregnant with her second child. She indicated that she and her husband had been fined for an unauthorized pregnancy by Chinese family planning authorities after the birth of their first son. She also alleged that she was unable to obtain permission to have a second child in China because of her "city residency." Her asylum application further states that she would be "forced to have an abortion and sterilization" and would face additional fines for having a second child if she returned to China. In addition, she noted that her second child would be unable to obtain social, health, and educational benefits pursuant to China's "coercive family planning" policies.

Her application also stated that her husband was a member of the Falun Gong religious organization. She asserted that she and her husband had been subject to "harassment" by Chinese government authorities as a result of his involvement in the Falun Gong movement.

At a hearing conducted on August 16, 2001, before an Immigration Judge ("IJ"), Mrs. Chen testified as follows: Her son, Zheng Shi Feng, was born on October 13, 1992. The pregnancy was unplanned. Despite being legally married, the Chens failed to obtain permission for the first pregnancy from state family planning authorities. When questioned as to why she failed to alert Chinese family planning authorities that she was pregnant, Mrs. Chen stated that: "At the time my mother was ill and I didn't really realize that I was pregnant at the time and I went down to serve my mom quite often because she, her illness really required a lot of attention from me and I never thought I was pregnant and did not go to apply for this birth certificate at the time."

After their son was born, the Chens took their son to be registered with Chinese government authorities. They were assessed a fine of 5000 Renminbi ("RMB") for having failed to obtain permission to conceive. In addition, Mrs. Chen was involuntarily fitted with an IUD and required to undergo quarterly pregnancy check-ups. The Chens were unable to pay the 5000 RMB fine in 1992. Mr. Chen was

unemployed at the time of their first son's birth, and did "little odd jobs" in order to make some money. It took Mrs. Chen and her husband three years to pay the fine.[1] Mrs. Chen provided the court with a copy of a 1995 receipt for the payment of the fine. It was received into evidence without an objection.

Mrs. Chen was six months pregnant at the time of her testimony. She and her husband had not obtained permission from Chinese family planning authorities to have a second child. She testified that if she were to be removed to return to China, the government would "take me away to have the child aborted, penalize me and also sterilize me." She further stated: "I know absolutely very well that when I arrived [sic] in Chinese territory that the fetus of the child will be aborted and also I will be penalized.... This is the Chinese one child policy. They do not allow you to have a second child."

Mrs. Chen's husband, Zheng Chun Yu, was a member of the Falun Gong movement in China. He fled from China to Canada as a result of pressure from the Chinese government. Mrs. Chen, however, was not able to respond to more detailed questions about her husband's religious activities because he did not share them with her.

Mrs. Chen has a younger brother who lives in the United States, but she does not know where. "I only know he is quite far

---

1. Mrs. Chen's testimony is consistent with evidence included in the Department of State Country Report as to the nature and size of the fines assessed for failure to comply with family planning practices. *See U.S. Department of State Country Reports on Human Rights Practices for 2000* (China) (released February 23, 2001), *available at:* http://www.state.gov/g/drl/rls/hrrpt/2000/eap/684.htm (*"Report"* or *"DOS Country Report"*) ("In Quanzhou, Fujian Province, the fine for

violating birth quotas is three times a couple's annual salary, to be paid over a 12 to 13 year period. In Shanghai the fine is also three times the combined annual salary of the parents. In Zhejiang Province, violators are assessed a fine of 20 percent of the parents' salary paid over 5 years. According to Guizhou provincial family planning regulations published in July 1998, families who exceed birth quotas are to be fined two to five times the per capita annual income of residents of their local area.")

away from here, but I don't understand English, so I don't even know what, where that location is." She stated that her brother was unable to come to the hearing because he lived far away and was needed at his store.

The IJ found that Mrs. Chen's testimony was not credible. The IJ reasoned as follows: "[T]he Court cannot even accept that the first alleged child was ever born, and therefore, the Court cannot, based upon the fact that [Mrs. Chen] is currently pregnant, come to the conclusion that [she] would automatically be considered in violation of the family planning one child policy." Thus, the IJ made no finding regarding whether Mrs. Chen had a well-founded fear that she faced forcible abortion, involuntary sterilization, or other persecution for becoming pregnant again. Based solely on his credibility findings, the IJ ruled that she was not eligible for asylum or entitled to withholding of removal. The IJ further concluded that it was not clear that Mrs. Chen would be incarcerated or subject to torture if she were returned to China. The BIA adopted the IJ's decision without opinion and ordered Mrs. Chen removed and deported to China. Mrs. Chen timely filed a petition for review of the BIA's decision.

## II

■ Mrs. Chen contends that she was persecuted in China when she was fined for an unauthorized pregnancy, fitted with an unwanted IUD birth control device, and subjected to regular pregnancy examinations. Additionally, she fears that she will be subject to a forced abortion and/or sterilization if she is returned to China. "We review the BIA's decision that an alien has not established eligibility for asylum to determine whether it is supported by substantial evidence." *Wang v. Ashcroft*, 341 F.3d 1015, 1019–20 (9th Cir.2003). Where

the BIA has adopted the IJ's reasoning without opinion, we review the IJ's decision under the same standard. *Id.* at 1020. The substantial evidence standard requires this court to grant a petition only if the evidence in the record is so strong that it compels a contrary conclusion. *Munoz v. Ashcroft*, 339 F.3d 950, 954 (9th Cir.2003); *see also* Immigration and Nationality Act ("INA") § 242(b)(4)(B), 8 U.S.C. § 1252(b)(4)(B) ("the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.").

## III

■ To establish eligibility for asylum, an applicant is required to demonstrate that he or she is a "refugee" within the meaning of the Immigration and Naturalization Act. INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). The Attorney General has the discretion to grant asylum to aliens who qualify as refugees. *See* INA § 208(b)(1), 8 U.S.C. § 1158(b)(1) ("The Attorney General *may* grant asylum to an alien who has applied for asylum in accordance with the requirements and procedures established by the Attorney General under this section if the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A).") (emphasis added). The regulation defines a refugee as "any person who is ... unable or unwilling to return to ... [her home] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42)(A), 8 U.S.C § 1101(a)(42)(A). In 1989, in response to a BIA decision holding that a person, who was subject to China's one-child policy, did not qualify for asylum or withholding of removal on that basis alone, *In re Chang*, 20 I. & N. Dec.

38, 1989 WL 247513 (B.I.A.1989), Congress added the following language to the definition of the term "refugee":

[A] person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance *shall be deemed to have a well founded fear* of persecution on account of political opinion.

8 U.S.C. § 1101(a)(42) (emphasis added).

 To establish eligibility for withholding of removal, an applicant must meet a stricter standard of proof than is required for asylum. *Ernesto Navas v. INS,* 217 F.3d 646, 655 (9th Cir.2000). The applicant must establish a "clear probability" that he or she would be persecuted if returned to her home country. *Id.* In other words, the applicant must prove that "it is more likely than not that [he or she] will be persecuted on account of a statutorily-protected ground." *Id.* (internal quotation marks omitted).

The IJ did not reach Mrs. Chen's substantive asylum claim, but based his adverse decision on credibility alone. He cited three grounds: (1) his disbelief that Mrs. Chen had a nine-year-old son living in China; (2) Mrs. Chen's lack of knowledge of her husband's involvement in the Falun Gong movement; and (3) the failure of Mrs. Chen's brother to testify on her behalf.

 We review the BIA's adverse credibility findings under the substantial evidence standard. *Gui v. INS,* 280 F.3d 1217, 1225 (9th Cir.2002). While this standard is deferential, the BIA or IJ must "provide 'a legitimate articulable basis' for challenging [an applicant's] credibility, and ... must 'offer a specific, cogent reason for any stated disbelief.' " *Wang v. INS,* 352 F.3d 1250, 1253 (9th Cir.2003) (quoting *Shah v. INS,* 220 F.3d 1062, 1067 (9th Cir.2000)). We independently evaluate each ground cited by the IJ for his adverse credibility findings. *Wang v. Ashcroft,* 341 F.3d at 1021. Minor discrepancies, inconsistencies or omissions that do not go to the heart of an applicant's claim do not constitute substantial evidence to support an adverse credibility finding. *Chebchoub v. INS,* 257 F.3d 1038, 1043 (9th Cir.2001)

### A.

To support his credibility finding regarding Mrs. Chen's testimony about her first child, the IJ stated that Mrs. Chen has not offered a "reasonable explanation" as to why she and her husband did not request official permission from state family planning authorities to have their first child. "[S]he was never able to explain why in the entire period of nine months of her pregnancy she was not able to take a brief period of time and request official permission, which would naturally have been forthcoming because she and her husband were married, especially in light of the fact that she and her husband would both have known that they would be subject to fines and sanctions for an unauthorized birth." When questioned by the IJ, Mrs. Chen testified that she was unable to obtain permission to have her first child because she was busy attending to her sick mother at that time. She testified that she was not "often" at home because her mother lived "quite far" from Mrs. Chen's residence. When asked again by the IJ why she failed to take this step, she answered that she had been married only

two months and "never thought [she] would get pregnant at the time."

The IJ did not question her further concerning her failure to request permission to become pregnant. Instead, he moved on to another subject, leaving this court to speculate whether Mrs. Chen did not fully understand the nature of the question due to the difficulties of translation,[2] or whether she had feared that a fine would be assessed immediately, or worse, that she would have been required to abort her child.[3] Mrs. Chen was denied a reasonable opportunity to explain what the IJ perceived as an inconsistency in her testimony. The IJ's doubt about the veracity of her story, therefore, cannot serve as a basis for the denial of asylum. *See Ordonez v. INS*, 345 F.3d 777, 786 (9th Cir. 2003) ("The logical corollary to the requirement that the BIA must address the explanations offered by a petitioner is that the BIA must provide a petitioner with a reasonable opportunity to offer an explanation of any perceived inconsistencies that form the basis of a denial of asylum.").

To corroborate her testimony that she gave birth to her first child in 1992, and that the pregnancy was unplanned, Mrs. Chen produced a copy of her son's birth certificate, as well as a copy of the receipt for the payment of the 5000 RMB fine for an unauthorized pregnancy. Mrs.

Chen was not required to produce any corroborating documentation, as we have held that an applicant's testimony alone, if unrefuted and credible, is sufficient to establish a claim for asylum. *See, e.g., Lopez–Reyes v. INS*, 79 F.3d 908, 912 (9th Cir.1996) ("Requiring an applicant to present corroborating evidence would make it 'close to impossible for [any political refugee] to make out a . . . case [for asylum].' ") (alterations in original) (quoting *Bolanos–Hernandez v. INS*, 767 F.2d 1277, 1285 (9th Cir.1984)). Mrs. Chen testified consistently throughout the hearing regarding the birth of her first son. She gave a logical explanation as to why the receipt carried a 1995 date when her son was born in 1992. She testified that the receipt was not issued until her family had the funds to pay the fine. This testimony does not contradict her earlier testimony that a fine was *assessed* upon her son's birth in 1992. The IJ therefore had no reason to require Mrs. Chen to document her son's birth or the fine.

The IJ, nevertheless, questioned the authenticity of the documentary evidence. The IJ stated: "Nor is the Court convinced that this son, if he does exist, was the cause of a sanction against the respondent given that she has nothing to show for it but a *so-called* receipt of a payment which was not issued until 1995." (emphasis added). Thus, the IJ rested his ad-

---

2. During the hearing, the proceeding stopped at one point so that the interpreter could translate from Foo Chow to Mandarin. The interpreter said, "I'm *trying* to interpret in Mandarin, that's why the Foo Chow actually sometimes are different from Mandarin. I think it's *probably* uniform." (emphasis added). *See He v. Ashcroft*, 328 F.3d 593, 598 (9th Cir.2003) ("Even where there is no due process violation, faulty or unreliable translations can undermine the evidence on which an adverse credibility determination is based."); *see also Balasubramanrim v. INS*, 143 F.3d 157, 162–64 (3d Cir.1998) (reversing the BIA's asylum denial where the BIA's ad-

verse credibility determination was based on testimonial inconsistencies possibly caused by the applicant's difficulty speaking English).

3. The DOS Country Report indicates that *any* "unplanned pregnancy" may result in a woman being required to abort her child, even if she is married. The Report also indicates that any unplanned pregnancy may result in a fine. The IJ's conclusion that permission "naturally" would have been "forthcoming" is inconsistent with the findings contained in the Report. *See DOS Country Report.*

verse credibility finding in part on his suspicion of the authenticity of the documents produced by Mrs. Chen. The IJ stated, "[d]ocuments in the record ... although admitted, are *highly suspect* and *unreliable* as the State Department Country Profile on China makes clear that fabricated documents from China are *routinely* submitted in asylum applications." (emphasis added).

This finding is problematic for two reasons. First, there is no statement in the DOS Country Report that Chinese asylum applicants "routinely" submit "fabricated" documents. In fact, the words "routinely," "fabricated," "forged," or "false" do not appear anywhere in the DOS Country Report referenced by the IJ. *See DOS Country Report.* The only reference to fraudulent documents in the DOS Country Report is in the context of those Chinese citizens that have been "trafficked" by "alien smugglers." *Id.* The DOS Country Report states: "[Trafficked persons'] movements often are restricted by the smuggling rings that trafficked them, and their *travel* documents, which are often fraudulent, frequently are confiscated." (emphasis added). *Id.* There is no evidence in this record, however, that suggests that Mrs. Chen entered the United States with a fraudulent document. Mrs. Chen did not produce a travel document at the hearing. Instead, she presented a birth certificate and a receipt for payment of a family planning fine.

■ Because the IJ failed to present a "legitimate articulable basis to question" the authenticity of the birth certificates and the receipt, and because he did not "offer a specific, cogent reason for any stated disbelief," his reliance on their alleged fabrication as part of his adverse credibility finding is not supported by substantial evidence. *Wang v. INS,* 352 F.3d at 1253. The IJ's finding that Mrs. Chen

did not have a nine-year-old son living in China was not supported by substantial evidence. Because Mrs. Chen presented credible testimony as to the existence of her first child, her statements before the IJ must be accepted as true. *Yi Quan Chen v. INS,* 266 F.3d 1094, 1101 (9th Cir.2001) ("*Yi Quan Chen I*"), *vacated on other grounds,* 537 U.S. 1016, 123 S.Ct. 549, 154 L.Ed.2d 423 (2002); *see also Salaam v. INS,* 229 F.3d 1234, 1239 (9th Cir.2000) ("[W]hen an alien credibly testifies to certain facts, those facts are deemed true, and the question remaining to be answered becomes whether these facts, and their reasonable inferences, satisfy the elements of the claim for relief.") (quoting *Ladha v. INS,* 215 F.3d 889, 900 (9th Cir.2000)).

**B.**

■ The IJ also found that Mrs. Chen's explanation of her husband's involvement in the Falun Gong movement was not credible. In this respect, the IJ stated, "*[a]lthough it is not directly part of her case,* the respondent was unable to reasonably or plausibly explain anything about her husband's relationship with the Falun Gong and why he left China." (emphasis added). The IJ found it implausible that a member of the Falun Gong would not share information about the movement with his wife based on the DOS Country Report and other "readily accessible new items" stating that the movement enjoyed the strong participation of women and was oriented toward "proselytizing and spreading the word." Citing nothing further, the IJ stated that he "believe[d] that her husband would have done his best to attempt to convert his wife as well and would have shared with her his excitement over his participation in the Falun Gong faith or organization."

The IJ's adverse credibility finding with regard to Mrs. Chen's husband's religious activities is not supported by substantial evidence. It is based on pure speculation. Moreover, Mrs. Chen's husband's alleged involvement in the Falun Gong movement did not form the basis for her asylum claim. Indeed, she included this information on her application in response to a question regarding whether she, or any relative, was a member of a religious organization. When asked on the application: "Why are you seeking asylum?," Mrs. Chen did not mention her husband's involvement in the Falun Gong movement. When questioned about the extent of his activities in that religious group at her hearing, Mrs. Chen answered, "I really do not know because this is man's business. I don't know that well." She also testified that her husband did not tell her anything about his involvement in the group.

■■■■ "The IJ's adverse credibility determination may not rest on incidental misstatements that do not go to the heart of [Mrs. Chen's] asylum claim. Generally, minor inconsistencies and minor omissions relating to unimportant facts will not support an adverse credibility finding." *Wang v. INS*, 352 F.3d at 1253 (internal citations and quotation marks omitted). Additionally, if Mrs. Chen's alleged evasiveness with regard to her husband's activities "cannot be viewed as attempts by the applicant to enhance [her] claims of persecution, [they] have no bearing on credibility." *Shah*, 220 F.3d at 1068 (internal quotation marks omitted). Mrs. Chen's husband's religious activities have no relationship to her testimony concerning her first child, her current pregnancy, or her fear that she will be subjected to forced abortion, sterilization, or other persecution if she returns to China. The IJ erred in considering this testimony in con-

cluding Mrs. Chen was not a credible witness regarding her asylum claim.

## C.

■■■■ The IJ also based his adverse credibility determination on the failure of Mrs. Chen's brother to appear at the hearing on her behalf. The IJ commented: "The Court can see no plausible explanation why the respondent's brother who is in the United States was not brought forward to corroborate any of the respondent's information." However, the IJ's skepticism about her proffered explanation does not provide substantial evidence to support his adverse credibility finding. Mrs. Chen testified that her brother did not live anywhere near the hearing. "I only know he is quite far away from here, but I don't understand English, so I don't even know what, where that location is." She also testified that he would be unable to travel to her hearing since "his store need[ed] him." Mrs. Chen's explanation was plausible, and the IJ erred by failing to consider it. *See Wang v. Ashcroft*, 341 F.3d at 1022 (holding that where "the BIA failed to consider '[a]ll plausible and reasonable explanations for any inconsistencies,'" the adverse credibility finding was not supported by substantial evidence).

■■■■ In addition, we have held that due process requires that an applicant be given a second opportunity to establish eligibility for asylum where the adverse credibility determination was based, without notice to the applicant, on a failure to produce a relative as a corroborating witness. *Sidhu v. INS*, 220 F.3d 1085, 1091 (9th Cir.2000). In *Sidhu*, we rejected the idea that an IJ could "surprise" an asylum applicant with an adverse credibility determination, when the applicant had already provided corroborative evidence, but failed to produce duplicative evidence that was "easily available." *Id.* "[W]here an appli-

cant produces credible corroborating evidence to buttress an aspect of his own testimony, an IJ may not base an adverse credibility determination on the applicant's failure to produce *additional* evidence that would further support that particular claim." *Id.* (emphasis added). In this case, Mrs. Chen's brother may have corroborated her testimony that she had a child living in China. However, Mrs. Chen had *already* provided the court with documentary evidence of this fact, including a birth certificate and a receipt for a fine paid for the failure to obtain permission to become pregnant with her first child. The IJ's finding that Mrs. Chen was not credible based on her brother's failure to testify is not supported by substantial evidence.

### D.

Despite the fact that Mrs. Chen testified concretely and consistently throughout her hearing, the IJ found that she was not a credible witness. The IJ explained his finding as follows: "There is just too much that does not make sense and added together the Court finds that the respondent's credibility is damaged to the point that her story cannot be accepted at face value." This general conclusion, however, amounts to no more than speculation and conjecture once we reverse each of the IJ's credibility findings. *Singh v. INS*, 292 F.3d at 1017, 1020–25 (9th Cir.2002).

We are compelled to conclude that the factual findings underlying the IJ's adverse credibility determination were not supported by substantial evidence. *See* INA § 242(b)(4)(B), 8 U.S.C. § 1252(b)(4)(B) ("administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary").

### IV

The Supreme Court has instructed that where the BIA has not made a finding on an essential asylum issue, the proper course of action for a court of appeals is to remand the issue to the BIA for decision. *INS v. Ventura*, 537 U.S. 12, 17, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002).

> Nor can an appellate court ... intrude upon the domain which Congress has exclusively entrusted to an administrative agency. A court of appeals is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry. Rather, the proper course, *except in rare circumstances,* is to remand to the agency for additional investigation or explanation.

> Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands. This principle has obvious importance in the immigration context.

*Id.* at 16–17, 123 S.Ct. 353 (second emphasis added) (internal citations and quotation marks omitted) (alteration in original). "Under *Ventura,* when we reverse the BIA's adverse credibility determination, we must ordinarily remand the case so that the BIA can determine whether the applicant has met the other criteria for eligibility." *He,* 328 F.3d at 604. In this case, the IJ did not determine whether Mrs. Chen had established eligibility for asylum or withholding of removal because he determined that her testimony that she would be subjected to a forced abortion or sterilization for having a second child was not credible. Accordingly, the record does not contain a finding whether her fear is well founded. We must remand this matter to the BIA for a determination whether Mrs. Chen has a well founded fear of being subjected to a forced abortion, involuntary sterilization or other persecution if she had been removed to China as ordered by the

IJ, *unless* we determine that this case presents one of the "rare" exceptions noted in *Ventura*. *Id.* at 16, 123 S.Ct. 353.

We have recognized such "rare" exceptions in two cases following the publication of the *Ventura* decision. In *He*, we reversed an adverse credibility finding against a petitioner who testified that his wife had been involuntarily sterilized after giving birth to their second child. 328 F.3d at 603. We recognized that "whether Mr. He is eligible for asylum turns entirely on his credibility. Congress has made specific statutory declarations about the asylum eligibility of those who are persecuted based on their opposition to birth control policies." *Id.* at 604. Accordingly, we held that "if Mr. He's claim that his wife was forcibly sterilized is believed, he is *necessarily* eligible for asylum under the BIA's interpretation of the INA," since "a person who has been forced to abort a pregnancy or to undergo involuntary sterilization," 8 U.S.C. § 1101(a)(42), "is automatically classified as a refugee." *He*, 328 F.3d at 604. The BIA had ruled that *per se* eligibility extended to applicants whose spouses were forcibly sterilized. *Id.* at 604 (citing *In re C–Y–Z–*, 21 I. & N. Dec. 915, 919–20 (BIA 1997)). Consequently, we held that remand for further proceedings in *He* was unnecessary under *Ventura*. *Id.* We did, however, remand the claim for further proceedings regarding whether Mr. He had met the more stringent standard for withholding of removal, and in the alternative, for an exercise of discretion by the Attorney General as to his asylum claim if he was found ineligible for withholding of removal. *Id.*

Following *He*, we similarly determined in *Wang v. Ashcroft*, that remand was not necessary after we reversed an adverse credibility determination. 341 F.3d at 1023. Like the petitioner in *He*, Mrs. Wang presented a claim for asylum and withholding of removal based on past persecution. We held that "[i]f [Mrs.]Wang's claim that she was forced to abort two pregnancies and subject to IUD insertion is believed, she is *necessarily* eligible for asylum as a political refugee." *Id.* at 1023 (emphasis added). Citing the 1998 Department of State Profile of Asylum Claims and Country Conditions for China, and the Government's failure to rebut the presumption that Mrs. Wang would have a well-founded fear of future persecution if returned to China, we further determined that "the record support[ed] a conclusion that there exist[ed] a clear probability that [Mrs.] Wang would face severe punishment if she return[ed] to China." *Id.* We therefore held that remand was also unnecessary on the question whether Mrs. Wang had met the more stringent criteria for withholding of removal. *Id.*

In this case, Mrs. Chen alleges that she has been subject to the involuntary insertion of an IUD birth control device, in addition to a large fine for the failure to obtain permission for her first pregnancy from state family planning authorities. We have not previously considered whether the involuntary insertion of an IUD rises to the level of persecution for purposes of an asylum claim. While we have "recognized that purely economic harm can rise to the level of persecution where there is 'a probability of deliberate imposition of substantial economic disadvantage' upon the applicant on account of a protected ground," *Chand v. INS*, 222 F.3d 1066, 1074 (9th Cir.2000) (quoting *Kovac v. INS*, 407 F.2d 102, 107 (9th Cir.1969)), we have not considered whether fines for unauthorized pregnancies in China rise to the level of persecution on which asylum may be granted.

Unlike the petitioners in *He* and *Wang*, Mrs. Chen does not allege that she has been forced to abort a pregnancy or to

undergo involuntary sterilization. *See* 8 U.S.C. § 1101(a)(42) ("a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion"). Therefore, she is not *necessarily* eligible for asylum as were the petitioners in *He* and *Wang.*

Rather, Mrs. Chen's asylum claim rests on the second part of the post–1989 definition of the term refugee as "a person who has a well founded *fear* that he or she *will be* forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance" *in the future. Id.* (emphasis added). Because the IJ deemed Mrs. Chen not credible, he did not reach that issue. We have now reversed the IJ's credibility finding, with the consequence that Mrs. Chen's testimony must be deemed credible. Based on her testimony, and other evidence in the record, the IJ on remand must determine, pursuant to *Ventura,* whether Mrs. Chen has a well founded fear.

### Conclusion

We hold that the IJ's adverse credibility finding was not supported by substantial evidence. Because the BIA and the IJ failed to determine whether Mrs. Chen faces forcible abortion, sterilization, or other persecution in Fujian Province, we remand the claims for asylum, withholding of removal, and relief under the Convention Against Torture to the agency for such determination. *See Ventura,* 537 U.S. at 17, 123 S.Ct. 353 ("[T]he agency can bring its expertise to bear upon the matter; it can evaluate the evidence; it can make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a court later determine whether its decision exceeds the leeway that the law provides."); *see also Yi Quan Chen v. INS,* 326 F.3d 1316, 1317 (9th Cir.2003) ("*Yi Quan Chen II* ") (remanding asylum and withholding of removal claims to the BIA for further consideration and investigation in light of the court's earlier decision on the applicant's credibility).

Petition for review GRANTED; REMANDED with instructions.