**Gohar MIKAYELYAN, Petitioner,**

v.

**Michael B. MUKASEY,\* Attorney General, Respondent.**

No. 04–73733.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 18, 2007.

Filed Dec. 21, 2007.

---

Warren M. Winston, Los Angeles, CA, for Petitioner.

CAC–District Counsel, Esq., Office of the District Counsel, Department of Homeland Security, Los Angeles, CA, Ronald E. Lefevre, Chief Counsel, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, James E. Grimes, Esq., Anh–Thu P. Mai, Esq., DOJ–U.S. Department of Justice Civil Div./Office of Immigration Lit., Washington, DC, Ellen Christensen, USD–Office of the U.S. Attorney, Detroit, MI, for Respondent.

Before: O'SCANNLAIN and M. SMITH, Circuit Judges, and MOSMAN ** , District Judge.

MEMORANDUM ***

## I. Background and Prior Proceedings

Gohar Mikayelyan, a native and citizen of Armenia, timely filed a petition for review of the Board of Immigration Appeals' ("BIA") per curiam order affirming an Immigration Judge's ("IJ") denial of her application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). The IJ found Ms. Mikayelyan was not a credible witness, and also denied the application based on Ms. Mikayelyan's failure to apply for asylum in either Russia or Georgia while she was en route to the United States.

** The Honorable Michael W. Mosman, United States District Judge for the District of Oregon, sitting by designation.

*** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

## II. Jurisdiction and Standard of Review

We have jurisdiction to review the petition pursuant to 8 U.S.C. § 1252.

Because it is a finding of fact, this Court reviews an IJ's adverse credibility determination for substantial evidence and should reverse that finding only if the evidence compels a contrary conclusion. 8 U.S.C. § 1252(b)(4)(B); *Chen v. Ashcroft*, 362 F.3d 611, 616 (9th Cir.2004). The IJ's decision to then grant or deny asylum to an eligible applicant is reviewed for abuse of discretion. 8 U.S.C. § 1252(b)(4)(D).

## III. Discussion

Immediately following Ms. Mikayelyan's testimony before the IJ, the IJ issued an oral decision denying relief to Ms. Mikayelyan on all three of her claims.[1] Alternately referring to Ms. Mikayelyan's "material variances," "outright lie[s]," and "material misrepresentations," she cited three examples of conflicting testimony and evidence that supported her belief that Ms. Mikayelyan had not been a credible witness. These discrepancies related to:

(1) The date Ms. Mikayelyan returned to Armenia from her 2000 trip to the United States;

(2) Whether Ms. Mikayelyan was given any food, bread, and/or water during the four days she spent in jail in 2001; and

(3) Whether Ms. Mikayelyan had spoken with her mother since their May 2001 arrest.

The IJ also indicated she would deny the application in the exercise of her dis-

1. Because the parties are familiar with the underlying facts of this case, we do not recount them here.

cretion. She stated that Ms. Mikayelyan had "ample opportunity to apply for asylum" in both Georgia and Russia before arriving in the United States, and she chose not to. Concluding that Ms. Mikayelyan could not simply "find [her] own haven," the IJ denied her application.

For the reasons explained below, we find: (1) the IJ's adverse credibility determination is not supported by substantial evidence; and (2) the IJ's denial of relief based on Ms. Mikayelyan's opportunity to apply for asylum in Georgia and Russia was an abuse of discretion. We therefore grant the petition and remand for further proceedings consistent with this disposition.

A. *The Adverse Credibility Determination*

■ Although the "substantial evidence" standard of review is highly deferential, the IJ must identify "specific, cogent reasons" in support of her adverse credibility determination. *Singh v. Ashcroft*, 367 F.3d 1139, 1143 (9th Cir.2004). Here, the IJ cited three specific reasons for finding Ms. Mikayelyan was not a credible witness.

First, the IJ cited Ms. Mikayelyan's testimony that she left the United States on October 26, 2000, as compared to a handwritten note on her asylum application—the author of which is unknown—indicating she was in the United States through the end of November. The IJ found this was "a highly significant distinction" because Ms. Mikayelyan had "allegedly participated in an October demonstration" that year.

The handwritten note appears to be an anomaly: Multiple portions of Ms. Mikayelyan's testimony as well as her signed and typed asylum application consistently reference her return to Armenia in late October 2000. In addition, her passport, a copy of which was attached to her application, contains a stamp indicating she arrived in Moscow on October 27, 2000, en route to Armenia. Finally, Ms. Mikayelyan never testified that she had participated in a demonstration in October 2000, but rather that her mother had participated and that the two of them had discussed the demonstration together in Armenia. While there is still a minor discrepancy on the record, there is precious little evidence to attribute it to Ms. Mikayelyan. Even if it could be linked to her, it does not constitute "substantial evidence" that she was not telling the truth, and cannot support an adverse credibility finding. *See Singh*, 367 F.3d at 1143 (noting that "minor inconsistencies or factual omissions that do not go to the heart of the asylum claim are insufficient to support [an adverse credibility finding]").

Second, the IJ cited the confusing testimony regarding Ms. Mikayelyan's receipt of food, bread, and/or water while in jail. Although it is a bit confusing, the exact language from both the application and the testimony transcript reveals there is no true discrepancy. Instead, Ms. Mikayelyan was paying close attention to the INS attorney's use of "and" and "or" in his questions. She acknowledged she was given water once during her detention when she asked for it. But when asked if she was given food, bread, *and* water, she consistently denied it. The worst that can be said of Ms. Mikayelyan's responses is that they were technically correct, but should have been amplified or explained further. As with the first discrepancy the IJ cited, this one also does not support an adverse credibility finding. *See id.*

Third, the IJ cited the conflicting evidence regarding Ms. Mikayelyan's contact with her mother since their May 2001 arrest. Ms. Mikayelyan testified that once she arrived in the United States in June

2001, she relentlessly telephoned her mother's house, and finally reached her mother in November of that year only to have her mother cut the conversation short because she feared it was being monitored. Ms. Mikayelyan also submitted a copy of a letter her father received from the Armenian Republic Bar Association on February 23, 2003, indicating her mother had been in detention since her May 2001 arrest. The letter also states the bar association would be able to "protect [the mother's] interests" if a family member would sign a contract and provide a retainer fee.

When the INS attorney asked Ms. Mikayelyan on cross-examination when her mother had been released from jail, she responded that she did not know whether her mother had ever been released. When he reminded her that she had just testified to speaking with her mother while her mother was at home in November 2001, and that this must mean her mother had been released at some point, she responded, "I think maybe, maybe she still is under surveillance. I cannot tell that."

While there is a discrepancy regarding the status and continued persecution of Ms. Mikayelyan's mother, it is simply too thin to constitute "substantial evidence" in support of an adverse credibility finding. The IJ repeatedly interrupted both attorneys to ask whether they had any further questions on this issue, and seemed in a rush to reach a decision. By cutting the direct and cross-examinations short, she prevented the attorneys from adequately probing or establishing the extent of the discrepancy. We do not know, for example, whether the Armenian government keeps citizens "under surveillance" as a type of "detention," as Ms. Mikayelyan's

counsel suggested during oral argument. There is also an inadequate record as to what weight can be given to the bar association's letter or whether its source is reliable, especially in light of its request for money and offer to represent Ms. Mikayelyan's mother.

The weaknesses in the third discrepancy are particularly troublesome when viewed together with the IJ's other two bases for her adverse credibility finding, both of which have little, if any, merit. In sum, we find the record lacks substantial evidence upon which to base an adverse credibility determination.

B. *The Opportunity to Apply for Asylum Elsewhere*

The IJ also denied Ms. Mikayelyan's application because she failed to apply for asylum at her first or second available opportunities in other countries, opting instead to apply in the United States. This justification for exercising her discretion is not supported by any statute or regulation. 8 C.F.R. § 208.13(c), which mandates denial of asylum for an alien who has "firmly resettled" in another country, is the only provision currently in force governing treatment of stays in third countries while en route to the United States.[2] This court has also explicitly held that denying asylum based on the opportunity to apply elsewhere is invalid. *Mamouzian v. Ashcroft*, 390 F.3d 1129, 1138 (9th Cir.2004) (reversing an IJ's discretionary denial of asylum because the IJ relied, in part, on the alien's failure to apply for asylum in Russia prior to arriving in the United States); *see also Maharaj v. Gonzales*, 450 F.3d 961 (9th Cir.2006) (en banc) (adopting a narrow reading of "firm resettlement").

**2.** In 2000, the INS revoked a regulation which had permitted discretionary denial of asylum in cases where an alien had been offered resettlement by a safe third country.

*See* Asylum Procedures, 65 Fed.Reg. 76,121 (Dec. 6, 2000) (repealing 8 C.F.R. § 208.13(d)).

Unless an applicant has been "firmly re-settled" in a third country, therefore, an IJ may not deny asylum on the grounds that an alien has spent time in another country before coming to the United States.

█ The IJ in this case never indicated—and the INS attorney never suggested—that Ms. Mikayelyan qualified as a "firmly resettled" alien, nor could the record support such a conclusion. Rather, the IJ simply concluded that Ms. Mikayelyan's failure to apply for asylum in Russia or Georgia was inappropriate. That decision is unsupported by current regulations and contrary to case law. The IJ therefore abused her discretion, and her denial of Ms. Mikayelyan's asylum application cannot stand.

IV. *Conclusion*

Because the IJ concluded Ms. Mikayelyan's testimony was not credible, she failed to address whether Ms. Mikayelyan otherwise met the statutory eligibility requirements for asylum and withholding of removal. Although the IJ concluded that "[o]n the record there's nothing to show that she's more likely than not to be persecuted or tortured as required under Convention Against Torture," the IJ "abuse[d] her discretion when [she] fail[ed] to state [her] reasons and show proper consideration of all factors when weighing equities and denying relief" as required under *Kamalthas v. INS*, 251 F.3d 1279, 1284 (9th Cir.2001) (internal citation and quotations omitted). For the reasons stated above, we grant the petition and remand to the BIA for further proceedings consistent with this disposition. *See INS v. Ventura*, 537 U.S. 12, 16–17, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam). Upon remand, the BIA should further evaluate each of Ms. Mikayelyan's three claims in light of her credible testimony.

**PETITION GRANTED; REMANDED.**