FILED

NOT FOR PUBLICATION

AUG 23 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MAKANE FARAH RWARIL, | No. 09-71206 |
| Petitioner, | |
| v. | Agency No. A095-591-660 |
| ERIC H. HOLDER, Jr., Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 6, 2010
Seattle, Washington

Before: WARDLAW and GOULD, Circuit Judges, and MILLS, District Judge.[**]

Makane Farah Rwaril, a citizen and national of Somalia, petitions for review

of the Board of Immigration Appeals' ("BIA") dismissal of his appeal from an

Immigration Judge's ("IJ") denial of asylum, withholding of removal, and relief

under the Convention Against Torture ("CAT"). We have jurisdiction pursuant to 8

_____

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

U.S.C. § 1252. Because we conclude that the IJ's adverse credibility finding is not supported by substantial evidence, we grant the petition and remand for further proceedings pursuant to *INS v. Ventura*, 537 U.S. 12 (2002).

The BIA found Rwaril not credible because he did not testify "in detail" about the attack by members of the United Somali Congress on his home or what happened to each family member during the attack. While the level of specificity in an applicant's testimony is an appropriate factor in considering credibility, *Singh-Kaur v. INS*, 183 F.3d 1147, 1153 (9th Cir. 1999), the IJ clearly erred in finding that Rwaril failed to provide detailed testimony. Neither the government attorney nor the IJ asked Rwaril to provide more detailed testimony about his asserted past persecution. Despite the absence of inquiry, the record shows that Rwaril provided a detailed explanation as to his six family members. Rwaril testified that his mother and one of his sisters were murdered during the home invasion; that his father was beaten during the invasion and died shortly thereafter; that his brother was shot and killed, and that he has no information about the whereabouts of his other sister. Rwaril's application further explained that his other brother, with whom Rwaril escaped the home invasion, died in a refugee camp.

The BIA also based its adverse credibility finding on the omission of information about the rape and killing of Rwaril's mother from his asylum

application. However, "[i]t is well settled that an applicant's testimony is not per se lacking in credibility simply because it includes details that are not set forth in the asylum application." *Lopez-Reyes v. INS*, 79 F.3d 908, 911 (9th Cir. 1996). Moreover, Rwaril testified that he did not prepare his application, which was actually prepared by a member of his church. Rwaril's current counsel, Bakary Fansu Conteh, also admitted during oral argument that he had not known the proper requirements for an asylum application because he was not yet a licensed lawyer when he began working on the application. We have "recognized that preparers, whether lawyers or non-lawyers, are not always scrupulous."*Alvarez-Santos v. INS*, 332 F.3d 1245, 1254 (9th Cir. 2003) (citing *Garrovillas v. INS*, 156 F.3d 1010, 1014 (9th Cir. 2003)). "Omissions from asylum applications are often not a sufficient basis for discrediting later testimony" and therefore, these "[i]nconsistencies due to an unscrupulous preparer, without other evidence of dishonesty . . . do not provide a specific and cogent basis for an adverse credibility finding." *Alvarez-Santos v. INS*, 332 F.3d 1245, 1254 (9th Cir. 2003).

The BIA also erroneously relied upon the facts that Rwaril "chose to testify in English," and provided "no proof of his native language." Although Rwaril testified that he spoke Swahili, the IJ stated that "I assume you also speak Somali," and made no further inquiry. Rwaril was never given an opportunity to

3

explain this perceived discrepancy or to clarify the IJ's confusion. *See Campos-Sanchez v. INS*, 164 F.3d 448, 450 (9th Cir. 1999) ("the BIA must provide a petitioner with a reasonable opportunity to offer an explanation of any perceived inconsistencies that form the basis of a denial of asylum.").

Nor is the BIA's findings that Rwaril provided "no support for his claim . . . that he is a practicing Christian," and no evidence that he attended church every Sunday supported by record evidence. To the contrary: Rwaril introduced his Certificate of Baptism, testified that he was a Christian, and identified the church he attended. "[W]here an applicant provides credible corroborating evidence to buttress an aspect of his own testimony, an IJ may not base an adverse credibility determination on the applicant's failure to produce additional evidence that would further support that particular claim." *Sidhu v. INS*, 220 F.3d 1085, 1092 (9th Cir. 2000).

The BIA's reliance on Rwaril's failure to corroborate his membership in the minority Barawa clan because he did not introduce a declaration from his wife, who he met and married after he came to the United States, is illogical. Similarly, that his identity document was not properly translated does not mean that it was falsified, and there is no evidence supporting a finding that it was. Thus the BIA's adverse credibility finding on these bases is illegitimate. *See Salaam v. INS*, 229

4

F.3d 1234, 1239 (9th Cir.2000) (holding that corroboration may be required only where there is a "legitimate reason" to question the applicant's credibility). Further, "due process requires that an applicant be given a second opportunity to establish eligibility for asylum where the adverse credibility determination was based, without notice to the applicant, on a failure to produce" corroborating evidence. *Zi Lin Chen v. Ashcroft*, 362 F.3d 611, 620 (9th Cir. 2004). Rwaril was not on notice that the identity document that he provided was unacceptable. Accordingly, the BIA could not base an adverse credibility determination on this failure.

Because the BIA's adverse credibility finding is not supported by substantial evidence, we grant the petition and remand for further proceedings on an open record. *See Soto-Olarte v. Holder*, 555 F.3d 1089, 1095-96 (9th Cir. 2009).

We further admonish counsel that compliance with our procedural rules is expected. Failure to comply renders an appeal subject to dismissal and may lead to disciplinary proceedings against counsel in this court. Counsel's opening brief failed to provide specific contentions and citation to the parts of the record on which the petitioner relied, appears to have been cut and pasted from another appellate brief, and does not meet this court's standards. *See generally* Fed. R.

App. P. 28; 9th Cir. R. 28-2.[1]  We thus request that pro bono counsel be appointed

on remand.

PETITION GRANTED; REMANDED.

---

[1]The panel has requested that the Ninth Circuit Appellate Commissioner place a watch on counsel due to his performance in this case. We note that the administrative record also suggests woefully inadequate representation by counsel at the administrative level.

Rwaril v. Holder, 09-71206

GOULD, Circuit Judge, Dissenting:

I respectfully dissent, believing that a rational fact-finder could have found that Rwaril was not credible. *See INS v. Elias-Zacarias*, 502 U.S. 478, 482 (1992). Rwaril omitted on his asylum application facts asserted in his hearing testimony to the effect that his mother was raped and killed in the home invasion spurred by the alleged inter-clan conflict. Not recalling such a striking fact in his application, one that the common experience of mankind would suggest is a superordinate instance of persecution, renders Rwaril's story suspect. The IJ permissibly could determine him not to be credible, thinking that this part of his story was added as an embellishment in hearing testimony. For this and other reasons stressed by the government, the record does not compel us to grant Rwaril's petition. We make a practical mistake by shifting the responsibilities of the Executive Branch, and a part of it, the BIA, steeped in immigration lore, onto judicial shoulders.