**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SUKHBIR SINGH, | No. 07-70346 |
| Petitioner, | Agency No. A097-613-351 |
| v. | |
| ERIC H. HOLDER, Jr., Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted May 11, 2010[**]
San Francisco, California

Before: HUG, SKOPIL and BEEZER, Circuit Judges.

Sukhbir Singh petitions for review of the Board of Immigration Appeals'

("BIA") final order of removal. The Immigration Judge ("IJ") denied Singh's

applications for asylum, withholding of removal, and protection under the

Convention Against Torture ("CAT") based on an adverse credibility finding. The

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

BIA adopted and affirmed the IJ's decision pursuant to Matter of Burbano, 20 I&N Dec. 872, 874 (BIA 1994). When the BIA summarily affirms the IJ's decision, we review the IJ's decision as the final decision of the BIA. Tamang v. Holder, 598 F.3d 1083, 1088 (9th Cir. 2010). We review an adverse credibility finding for substantial evidence. Gui v. INS, 280 F.3d 1217, 1225 (9th Cir. 2002). Because Singh applied for asylum in 2004, we apply pre-REAL ID Act standards. See Joseph v. Holder, 600 F.3d 1235, 1240 n.3 (9th Cir. 2010) (noting that, when reviewing an adverse credibility finding, "[w]e apply pre-REAL ID Act standards [when the alien] filed his application for relief . . . before May 11, 2005, the effective date of the REAL ID Act").

We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). We grant Singh's petition for review and remand his case to the BIA for further proceedings.

The facts of this case are known to the parties. We repeat them only as necessary for our analysis.

# I

The BIA's adverse credibility finding is not supported by substantial evidence.

# A

The IJ noted two instances in which she found Singh to be unresponsive to questioning. First, the IJ indicates that Singh "had no explanation" for why he claimed to have paid 11 rupees for party membership when a receipt showed that party membership cost only 2 rupees. In fact, Singh explained that although a membership cost only 2 rupees, he chose to pay 11 rupees as a political contribution. The IJ asked no follow-up questions and did not provide Singh with an opportunity to clear up any remaining ambiguity, so this "unresponsiveness" cannot support an adverse credibility determination. See Chen v. Ashcroft, 362 F.3d 611, 618 (9th Cir. 2004) (holding that a petitioner cannot be denied a reasonable opportunity to explain a perceived inconsistency).

Second, the IJ noted that Singh "gave no response as to why he did not join [the Akali Dal Mann party] sooner" than he did. Yet the transcript reveals that Singh, in fact, answered this question by stating that he worked on his family's farm and joined the party when he had time and was able to attend rallies with his father. The IJ provides no reason for disbelieving Singh's testimony, and the record does not support the conclusion that Singh was unresponsive. See Singh v. Ashcroft, 301 F.3d 1109, 1114 (9th Cir. 2002) (holding that the BIA "must identify particular instances in the record where the petitioner refused to answer questions asked of him").

3

**B**

The IJ indicates four instances where Singh's testimony lacked detail. First, the IJ notes that Singh's "inability to provide any information or detail about his father's arrests after having alleged that his father had been arrested many times undermines his credibility." Yet Singh was never given an opportunity to provide more detail about his father's arrests—he was only ever asked to testify about these arrests from memory. See Chen, 362 F.3d at 618. Moreover, Singh testified only that he heard from his mother that his father had been arrested several times in the past and that he was never present at any of these arrests. Given Singh's further testimony that his father was only ever held in custody for very short periods of time, Singh's lack of knowledge or memory regarding the specifics of these arrests does not support an adverse credibility finding.

Second, the IJ also indicated that Singh could not testify about how long his father had been a member of the Akali Dal Mann party. Singh testified that he thought that his father joined after Singh was born when Singh was still "quite small," but that he could not remember any specifics. Again, Singh was not given an opportunity to provide more detail. See Chen, 362 F.3d at 618. Also, the length of his father's membership in the party has no bearing on Singh's asylum claim, and it does not support an adverse credibility finding. See Don v. Gonzales, 476

4

F.3d 738, 742 (9th Cir. 2007) (holding that lack of detail regarding minor issues cannot support an adverse credibility determination).

Third, the IJ noted that even though Singh distributed political posters, he could not recall the name of the person at whose house he twice picked up the posters. Yet Singh testified that it was common knowledge in his village where to go to pick up posters and that he simply went to that location, picked up posters, and distributed them. It is unclear in the record if Singh ever even met this person, and, even if he did, Singh had very limited exposure to this person—he went to his house twice for the sole purpose of picking up political posters. Singh was not given an opportunity to provide more information about this person. See Chen, 362 F.3d at 618. Again, this is no more than a minor detail that cannot support an adverse credibility finding. See Don, 476 F.3d at 742.

Fourth, the IJ notes that Singh "never could articulate in any type of specificity what the injuries were that he sustained" during his February 2003 arrest. Yet Singh testified that police beat him with a stick all over his body, tied him down to a pole and beat him, tied him to an ice block and beat him, left him tied to that ice block for four to five hours, and tied him down and pulled his legs apart. Singh testified that he still had markings on his legs from this beating, and the IJ noted that Singh exposed his scars at his hearing. Singh also testified that

5

the ice block left him with frostbite all over his body.  Singh was not asked to be more specific after he gave this testimony, and the IJ did not explain what details were missing, so this "lack of detail" cannot support an adverse credibility finding. See Chen, 362 F.3d at 618.

## C

The IJ indicated three instances where Singh's testimony was inconsistent. First, the IJ relied heavily on inconsistency between Singh's testimony and country conditions documents from the Department of State.  Yet our review reveals that these documents are, in fact, consistent with Singh's testimony.  Singh was arrested several times and accused of being a militant, supporting militants and supporting separatism.  The country conditions documents note that because "it would be hard for a suspect to prove that he does not belong to a secret group, an individual could plausibly be accused, perhaps unjustly, of being a terrorist if police think that he is in one of these groups."  The documents further note that "[t]here is still widespread harassment of anyone who expresses separatist sympathies," that "individual Sikhs are 'probably targeted' at times by local police," and that "reports of [detention and physical abuse] seem[] plausible given conditions in Punjab."  In addition, the Department of State explicitly mentioned that there were "credible reports that police throughout the country often did not

file legally required arrest reports, resulting in hundreds of unsolved disappearances in which relatives claimed that an individual was taken into police custody and never heard from again."

Second, the IJ indicates that Singh's testimony at his hearing and asylum interview was inconsistent with his written asylum application. In his written asylum application and in his testimony before the IJ, Singh indicated that the police used a wooden roller on his legs. In his asylum interview, Singh explained how the police beat him with wooden sticks, but he did not mention the wooden roller until asked about it. When asked why he had forgotten to mention the roller to the asylum officer at his interview, Singh explained that he had never been interviewed in that way before and forgot to mention it because he was frightened. The IJ gives no reason for rejecting Singh's explanation, and so it cannot support its adverse credibility determination. See Singh, 301 F.3d at 1114.

Third, the IJ notes an inconsistency between Singh's claimed appearance in May 1999 and his driver's license photograph from March 2001. The IJ provides no reason for disbelieving Singh's testimony that he cut his hair after his 1999 arrest, again preventing support for an adverse credibility determination. See Singh, 301 F.3d at 1114.

**D**

7

Singh also provides three pieces of corroborative evidence to support his asylum claim. The IJ gave no reason for discounting a letter from the Akali Dal party or an affidavit from Singh's father. The IJ rejected a letter from Singh's mother, however, finding it was internally inconsistent. When describing an instance where the police came to her house looking for Singh, Singh's mother wrote: "I doubt that they want to arrest you again. My son your life is in danger here, don't come to India. This is my earnest request." While the IJ found these sentences to be inconsistent, the meaning is abundantly clear—the police are not interested in arresting Singh, they are interested in killing him. The affidavit from Singh's father corroborates this meaning. The IJ's interpretation and subsequent rejection of this letter is unreasonable.

**II**

Singh has established his eligibility for asylum by demonstrating a subjective fear of persecution and an objectively reasonable fear of future persecution. Singh demonstrated his subjective fear of persecution with credible testimony and corroborative evidence. As demonstrated above, no element of the IJ's adverse credibility determination is supported by substantial evidence. The record before us therefore compels the conclusion that Singh was persecuted on

8

account of his political opinion and has an objectively reasonable fear of future persecution.  See Li v. Holder, 559 F.3d 1096, 1113 (9th Cir. 2009).

Even though Singh has established his eligibility for asylum, the government may offer evidence on remand to defeat his asylum claim, including, for example, evidence that circumstances within India have changed since Singh left.  See id. We therefore remand this case to the BIA for further proceedings to allow the BIA to continue its asylum, withholding of removal, and CAT analysis and to allow the government the opportunity to rebut Singh's claims.  See id.

**PETITION GRANTED; REMANDED for further proceedings.**