NELSON, Senior Circuit Judge,
dissenting:
I respectfully dissent. The IJ’s and BIA’s adverse credibility determinations are not supported by substantial evidence. Soto-Olarte v. Holder, 555 F.3d 1089, 1091 (9th Cir.2009). I would grant the petition for review.
Poghosyan is a Jehovah’s Witness who came to the United States from Armenia in October of 2000. She left behind her only daughter, then a teenager. Before Poghosyan fled Armenia, police officers arrested and detained her on three separate occasions because of her efforts to promote her religion. Each time, the police officers *671 abused Poghosyan physically and verbally. They forced her to sign documents that she was not permitted to read and threatened to prosecute her if she continued preaching about her religion. Each time, Poghosyan’s cousin was forced to pay a bribe to get her released from custody. All of these facts go to the heart of Pogho-syan’s claims for asylum, withholding of removal, or relief under CAT.
However, the IJ and BIA found that Poghosyan was not credible because of minor inconsistencies and omissions in her testimony relating to trivial details. Cf. Chen v. Ashcroft, 362 F.3d 611, 620 (9th Cir.2004). “Indeed, we have frequently characterized discrepancies in dates [and times] which reveal nothing about an asylum applicant’s fear of h[er] safety to be minor inconsistencies that cannot form the basis of an adverse credibility finding.” Bandari v. INS, 227 F.3d 1160, 1166 (9th Cir.2000) (internal citation and quotations omitted). Poghosyan’s testimony that she was detained on a Sunday in 2000, and not on a Friday, is one example of many such minor inconsistencies. Neither the majority nor the BIA explain why this discrepancy goes to the heart of Poghosyan’s claim. The fact remains that Poghosyan was detained, regardless of the day of the week on which that event took place.
The IJ and BIA also failed to provide specific, cogent reasons for finding that Poghosyan was not credible. Damaize-Job v. INS, 787 F.2d 1332, 1338 (9th Cir.1986). For instance, the IJ and BIA pointed to the fact that Poghosyan testified initially that her cousin paid 7,000 drams to police officers to secure Pogho-syan’s release from custody in 1999, but then later testified that her cousin paid 10,000 drams. This is a difference of six dollars. The IJ and the BIA never explained, however, why this minor discrepancy suggests that Poghosyan was lying. I cannot see what motivation Poghosyan would have for making an intentional misrepresentation over such a small amount of money. The most logical explanation is that Poghosyan was mistaken, not that she lied in her testimony.
Moreover, none of the discrepancies noted by the IJ or BIA concern evidence that would enhance Poghosyan’s claims of persecution. Shah v. INS, 220 F.3d 1062, 1068 (9th Cir.2000) (“If discrepancies cannot be viewed as attempts by the applicant to enhance his claims of persecution, [they] have no bearing on credibility.”) (internal citations omitted). Whether Poghosyan spent two days or two and a half days in detention in September of 2000 does not change the fact that she was incarcerated because of her religious activity and that she consequently feared for her safety.
Finally, the BIA erred in affirming an adverse credibility finding based on Po-ghosyan’s failure to present further corroborating evidence. “Where, as here, a petitioner provides some corroborative evidence to strengthen [her] case, [her] failure to produce still more supporting evidence should not be held against [her].” Gui v. INS, 280 F.3d 1217, 1227 (9th Cir.2002).
In this case, Poghosyan submitted ample evidence regarding her claim of past persecution and her well-founded fear of future persecution. For example, Pogho-syan submitted two letters from friends in Armenia corroborating her testimony that she was beaten by the police to the point of requiring hospitalization. She also submitted two U.S. State Department country reports from 2002 and 2003, two U.S. State Department International Religious Freedom Reports from 2002 and 2005, and a news article entitled “Jehovah’s Witnesses, 5000 citizens — out of law,” all of which collectively documented accounts of harassment and abuse targeted at Jeho *672 vah’s Witnesses before and after the Armenian government legalized the religion in 2004. These incidents were perpetrated by government officials directly and facilitated indirectly by the government’s unwillingness to intervene.
Given the evidence in the record, it was also inappropriate for the BIA to base its adverse credibility finding on Poghosyan’s failure to submit further evidence. There was no basis for the BIA to draw a negative inference from the fact that Mariam, Poghosyan’s daughter, did not testify. Mariam is not a Jehovah’s Witness, she did not witness any of the attacks against her mother, and she was just a young teenager at the time. The BIA’s assertion that Mariam could have verified any of the salient facts in Poghosyan’s case was “based on pure speculation.” Chen, 362 F.3d at 619; see Maini v. INS, 212 F.3d 1167, 1175 (9th Cir.2000) (“We have said it before and we say it again: conjecture and speculation can never replace substantial evidence.”). Moreover, Poghosyan was under no obligation to submit a letter from her cousin who is a Jehovah’s Witness in Armenia. As this Court has long recognized, “obtaining] corroborating affidavits from relatives ... living outside of the United States ... is almost never easily available.” Sidhu v. INS, 220 F.3d 1085, 1091-91 (9th Cir.2000); see also Dawoud v. Gonzales, 424 F.3d 608, 612-13 (7th Cir.2005) (“Many asylum applicants flee then-home countries under circumstances of great urgency. Some are literally running for their lives and have to abandon their families, friends, jobs, and material possessions without a word of explanation.... To expect these individuals to stop and collect dossiers of paperwork before fleeing is both unrealistic and strikingly insensitive to the harrowing conditions they face.”).
In this case, because “each of the IJ’s [and] BIA’s proffered reasons for an adverse credibility finding fails, we must accept [Poghosyan’s] testimony as credible.” See Kaur v. Ashcroft, 379 F.3d 876, 890 (9th Cir.2004), superseded by statute as explained in Aden v. Holder, 589 F.3d 1040, 1044-45 (9th Cir.2009).
In addition to my concern that the adverse credibility determinations were not supported by substantial evidence, I am troubled by the context in which this case arises. Under the new Department of Homeland Security policies, this case likely would be dismissed. Poghosyan is an elderly mother with no criminal history who entered this country lawfully, seeking freedom from religious persecution.
For these reasons, I would grant the petition for rehearing, reverse the adverse credibility determination and remand to the BIA to consider whether Poghosyan qualifies for asylum, withholding of removal, and relief under CAT. I respectfully dissent.