Gayane **MEZLUMYAN**, Petitioner,

v.

Eric H. **HOLDER** Jr., Attorney General, Respondent.

No. 05–70092.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 14, 2009.

Filed July 30, 2009.

Robert Bradford Jobe, Esquire, Law Offices of Robert B. Jobe, San Francisco, CA, for Petitioner.

James Eugene Grimes, Senior Litigation Counsel, Jeffery R. Leist, Trial, Mark Christopher Walters, Esquire, Assistant Director, U.S. Department of Justice, Washington, DC, Ronald E. Lefevre, Office of the District Counsel Department of Homeland Security, San Francisco, CA, for Respondent.

Before: D.W. NELSON, W. FLETCHER and PAEZ, Circuit Judges.

MEMORANDUM *

Petitioner Gayane Mezlumyan petitions this court for review of the Board of Immigration Appeals' ("BIA") affirmance of the Immigration Judge's ("IJ") denial of her application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). The IJ determined that Petitioner's application was based entirely upon the persecution of her husband, Karen Mezlumyan, and concluded that her husband, who testified at Petitioner's hearings, was not credible.

"We review the IJ and BIA's adverse credibility finding for substantial evidence," *Soto–Olarte v. Holder,* 555 F.3d 1089, 1091 (9th Cir.2009), although "the IJ must provide specific, cogent reasons for reaching an adverse credibility determination, and minor inconsistencies or factual omissions that do not go to the heart of the asylum claim are insufficient to support it," *Singh v. Ashcroft,* 367 F.3d 1139, 1143 (9th Cir.2004) (internal citation omitted).

Substantial evidence does not support the IJ's determination that Petitioner's husband was not credible. Because we "must decide whether to grant or deny the petition for review based on the ... [IJ and BIA's] reasoning rather than our own independent analysis of the record." *Azanor v. Ashcroft,* 364 F.3d 1013, 1021 (9th Cir.2004). However, we express no opinion as to other reasons that may support an adverse credibility finding. We thus remand so that the BIA may consider other reasons in reevaluating the credibility of Petitioner and her husband. *See Soto–Olarte,* 555 F.3d at 1095–96.

Neither the BIA nor the IJ identified specific inconsistencies in Petitioner's husband's testimony, but the IJ did note that the asylum officer who conducted the husband's asylum interview identified "several" inconsistencies, including inconsistencies related to a speech the husband gave that was broadcast over the radio. The asylum officer and the government identified four main inconsistencies: whether

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

the husband was arrested alone after his radio broadcast, whether his arrest was publicized, whether his radio broadcast was a speech or an interview, and whether the radio broadcast was the motivation for his second arrest. A review of the record, however, suggests that the inconsistencies are either not inconsistent, not material, or both.

First, the asylum officer testified that, during the asylum interview, the husband contradicted himself as to who was arrested after the speech. The interview notes show that the asylum officer asked the husband whether he was "arrested alone or other arrested too?," to which the husband replied, "alone, just me." In the same interview, the husband stated that he was arrested with another journalist. During Petitioner's hearing, the husband consistently testified that he was arrested with another journalist.

These statements are not necessarily inconsistent. The asylum officer's question was vague, and the husband's answer is open to several interpretations. Petitioner could have meant he was alone when he was arrested, or alone when taken to the detention center. Furthermore, the asylum officer's notes suggest that there were translation problems during the interview. During the interview, the husband stated that he was arrested with another journalist, prompting the asylum officer to ask, "You said before no one else arrested?" The husband replied that he did not "remember [saying] that." As a general matter, this court has cautioned against "undue reliance" on airport interviews because they are "perfunctory" and "undermine[ ] the exhaustive opportunities given to asylum applicants to develop their cases on the merits." *Singh v. INS*, 292 F.3d 1017, 1023 (9th Cir.2002). Finally, even if the statements were inconsistent, whether the husband was arrested alone or with a journalist is not material to his claim of perse-

cution. *Zhu v. Mukasey*, 537 F.3d 1034, 1038–39 (9th Cir.2008).

Second, the government noted an inconsistency as to whether the husband's arrest was reported in the news. The asylum officer testified that during the interview, he asked the husband if one of his arrests "made the news," to which the husband responded "yes," but that he did not have a report of his arrest. During the hearing, the husband said that this arrest "wasn't reported anywhere," but that "[i]t was a big thing within our Party. It was a big scandal within our Party." These statements are not inconsistent because the phrase "made the news" is vague and open to several interpretations.

Third, the government alleged an inconsistency as to whether the radio broadcast was a speech or an interview. At the asylum interview, the husband said that the event leading to his first arrest was an interview with a journalist broadcast over the radio. At his hearing, however, when confronted with his alleged interview statements, he told the IJ that he gave a speech, not an interview. A review of the record, however, suggest that this "inconsistency" was not inconsistent at all. It appears that, perhaps due to translation difficulties, the husband misunderstood the distinction between a speech and an interview. Indeed, during one colloquy at Petitioner's hearing, the husband referred to his radio broadcast as an "interview" but Petitioner's attorney referred to it as a "speech." Moreover, this inconsistency is certainly not material to his or Petitioner's claims of persecution, and do not go to the heart of the claims. *Zhu*, 537 F.3d at 1038–39.

Fourth, during the asylum interview, the husband specifically told the officer that his radio broadcast was the reason for both his first and second arrests. When

confronted with this testimony at Petitioner's hearing, however, he denied that his second arrest occurred as a result of his radio broadcast, instead claiming that his "further [political] activities ... were the reason of ... [his] second arrest," including organizing and participating in strikes and rallies.

Again, the source of the alleged inconsistency is a statement made in an airport interview. As mentioned above, we "hesitate to view statements given during airport interviews as valuable impeachment sources," for various reasons. *Li v. Ashcroft*, 378 F.3d 959, 962 (9th Cir.2004). A review of the record as to this question suggests one reason: the asylum officer's notes are not a model of clarity. The officer may have asked, "Why you were arrested second time," but his notes do not indicate any corresponding answer. Instead, in response to the question, "In your second arrest what they say to you when beat you?" the husband apparently said "Revenge for the broadcast *and my public opposition*." *Id.* (emphasis added). "[P]ublic opposition" certainly includes strikes and rallies.

Moreover, even assuming these statements are inconsistent, whether the husband was arrested due to his political speech or due to his political activities does not change the fact that he testified one way or the other that he was arrested, and subsequently beaten, on account of his political beliefs. Discrepancies that cannot be viewed as attempts to enhance claims of persecution generally have no bearing on credibility. *Singh v. Ashcroft*, 362 F.3d 1164, 1171 (9th Cir.2004).

Nor does substantial evidence support the IJ's determination that Petitioner herself was not credible. Petitioner testified to at least one instance of alleged persecution where her husband was not present: the attack in late 1999 where National Security agents forced their way into Petitioner's house, threatened her, and beat her and her children. Her husband did not testify as to this incident during Petitioner's hearing. Yet the IJ says nothing about this incident in his decision and gives no reason why her testimony as to this incident should be discredited; instead, the IJ's denial of Petitioner's applications rests completely on his credibility determination as to her husband. The IJ's failure to consider Petitioner's individualized credibility as to this event requires remand. *Cf. Singh*, 367 F.3d at 1143.

Because the IJ's adverse credibility determinations as to Petitioner and her husband were not supported by substantial evidence, we remand to the BIA to allow it to provide further reasons supporting the adverse credibility determination if it wishes to do so.[1] *See Soto–Olarte*, 555 F.3d at 1093–96.

**GRANTED and REMANDED.**

---

[1]. Because the IJ's adverse credibility finding is not supported by substantial evidence, and we remand for the IJ to make another determination, we do not reach the IJ's corroboration findings. *Cf. Kaur v. Ashcroft*, 379 F.3d 876, 889–890 (9th Cir.2004) (" '[A]n alien's testimony, if unrefuted and credible, direct and specific, is sufficient to establish the facts testified without the need for any corroboration.' "). For the same reason, we also do not reach Petitioner's other claims.