**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SUKHDEV SINGH, aka Manjaf Singh<br><br>Petitioner,<br><br>v.<br><br>ERIC H. HOLDER, Jr., Attorney General,<br><br>Respondent. | No. 07-71641<br><br>Agency No. A200-101-350<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 5, 2010
Pasadena, California

Before: PREGERSON, D.W. NELSON and IKUTA, Circuit Judges.

Manjaf Singh ("Singh"), a native and citizen of India, petitions for review of

a final order of removal issued by the Board of Immigration Appeals ("BIA"),

denying his applications for asylum, withholding of removal, and relief under the

Convention Against Torture ("CAT"). The Immigration Judge ("IJ") found that

Singh had permanently resettled in Austria, and that Singh's testimony was not

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

credible. The BIA affirmed. For the reasons that follow, we conclude that neither finding is supported by substantial evidence.

## I. FIRM RESETTLEMENT FINDING

The government has not presented direct evidence that Austria issued Singh "a formal offer of some type of official status permitting the alien to reside in that country indefinitely," nor has the government shown "that direct evidence of a formal offer is unobtainable." *Maharaj v. Gonzales*, 450 F.3d 961, 976 (9th Cir. 2006) (en banc). Accordingly, the government has failed to carry its burden of establishing that Singh is "firmly resettled" in Austria. 8 C.F.R. § 208.15; *see also Maharaj*, 540 F.3d at 967. Thus, Singh is not barred from seeking asylum under regulations applicable to his application. 8 C.F.R. § 208.13(c)(2)(i)(B).

## II. ADVERSE CREDIBILITY FINDING

As we said in *Gui v. INS*, "[w]e do not accept blindly an IJ's conclusion that a petitioner is not credible. Rather, we examine the record to see whether substantial evidence supports that conclusion and determine whether the reasoning employed by the IJ is fatally flawed." 280 F.3d 1217, 1225 (9th Cir. 2002) (internal citation and quotations omitted). The REAL ID Act requires that credibility determinations "be made after considering 'the totality of circumstances, and all relevant factors.'" *Shrestha v. Holder*, 590 F.3d 1034, 1040

(9th Cir. 2010).  Considering the totality of the circumstances in this case, the IJ's adverse credibility finding is not supported by substantial evidence.

The BIA cited five grounds for affirming the IJ's credibility determination. Before considering each of these grounds in turn, we note that Singh's second hearing is troubling.  The BIA remanded Singh's case after the first hearing because the transcript had "an excessive amount of indiscernible testimony" due to "the interpreter and the respondent . . . speaking simultaneously."  On remand, the BIA directed the IJ to "prepar[e] a complete transcript of the proceedings including a new hearing, if necessary."  The IJ decided to conduct a new hearing but, at the start of the second hearing, told the parties that their task was to "recreate the [first] hearing."  During questioning, the IJ frequently referred to Singh's testimony from the first flawed hearing.  Thus, in effect and unwittingly, the IJ improperly shifted the burden to Singh to *disprove* the previous finding that Singh was not credible. We therefore scrutinize the IJ's findings carefully.

### a.      The date of Singh's high school graduation

The BIA affirmed the IJ's conclusion that Singh's testimony regarding the timeline leading up to his first beating was inconsistent and changed from the first merits hearing to the second.  The IJ's focus on the date of Singh's high school graduation favored a trivial (and debatable) discrepancy over substantial evidence

3

to the contrary. This is exactly the sort of cherry-picking forbidden in *Shrestha*, 590 F.3d at 1040.

Singh's written and oral testimony about his time in college and the subsequent beating by the police were consistent. The IJ instead focused on the date of Singh's *high school* graduation and attributed answers to Singh which Singh never gave. For example, Singh never claimed to have graduated high school in 1979, as the IJ stated. The IJ suggested that date based on the IJ's own calculation, but Singh did not confirm it. The IJ's mischaracterization of Singh's testimony cannot support an adverse credibility finding. *Tekle v. Mukasey*, 533 F.3d 1044, 1053 (9th Cir. 2008) (rejecting finding of inconsistent testimony when the IJ incorrectly summarized the testimony).

The IJ's skepticism about the timeline of Singh's education was based largely on Singh's asylum application, which was prepared by his attorney, Viney Gupta.[1] However, the application is clearly unreliable. First, page four of Singh's application states that he attended high school for ten years. This does not make sense. Second, the same page states that Singh worked as a Store Clerk in San

---

[1]Attorney Viney Gupta is familiar to us because he has been the subject of more than one ineffective assistance of counsel claim before this court. *See, e.g., Singh v. Gonzales*, 491 F.3d 1090 (9th Cir. 2007); *Taher v. Mukasey*, 295 F. App'x. 178 (9th Cir. 2008).

4

Diego beginning in February 2006. Singh was in detention and otherwise ineligible for a work permit at that time.[2] *See* 8 C.F.R. § 208.7.

Thus, considering the totality of the circumstances, the high school date on the asylum application is insufficient to cast doubt on Singh's overall credibility. "Inconsistencies due to an unscrupulous preparer [of an asylum application], without other evidence of dishonesty . . . do not provide a specific and cogent basis for an adverse credibility finding." *Alvarez-Santos v. I.N.S.,* 332 F.3d 1245, 1254 (9th Cir. 2003) (internal citations omitted). Moreover, a *trivial* inconsistency, if there was an inconsistency here at all, is not substantial evidence that Singh was not credible. *See Shrestha*, 590 F.3d at 1044.

### b.      The letter from Singh's physician

The BIA affirmed the IJ's finding that Singh was not credible because the doctor's letter Singh submitted about his 1987 injuries did not specify that Singh was beaten. The letter from Singh's treating physician, however, is not, on its face, inconsistent with Singh's testimony. *See Singh v. Ashcroft*, 301 F.3d 1109, 1112 (9th Cir. 2002) (finding a doctor's letter not inconsistent with petitioner's claims

---

[2]We note that on the same day Attorney Viney Gupta prepared this asylum application, he also prepared an I-134 Affidavit of Support from Singh's cousin, Jagir Singh, who lived in San Diego. Taken together, the documents give rise to a clear inference that there was a mix-up of information.

when it did not directly *contradict* his testimony).  The letter merely suggests a possible cause of Singh's injuries.  Moreover, Singh offered several plausible explanations why the doctor may not have stated that Singh was beaten.  The failure of the IJ to articulate reasons for rejecting Singh's explanations was error.  *See Soto-Olarte v. Holder*, 555 F.3d 1089, 1091 (9th Cir. 2009) (*quoting Kaur v. Ashcroft*, 379 F.3d 876, 887 (9th Cir. 2004) ("An adverse credibility finding is improper when an IJ fails to address a petitioner's explanation for a discrepancy or inconsistency.")).

The IJ also faulted Singh for not providing corroborating evidence about the 1987 beating.  But, as we stated in *Aden*, "an applicant cannot be turned down solely because he fails to provide evidence corroborating his testimony, where he does not have and cannot reasonably obtain the corroboration."  589 F.3d at 1045; *see Kaur*, 379 F.3d at 890 (finding that documents from friends and neighbors in India are not easily available).  Even if Singh was able to reach his family in India, it is unreasonable to expect that they would have been able to track down an emergency room physician who treated him nearly a quarter century ago.

c.    **Singh's return trips to India**

The BIA affirmed the IJ's conclusion that it was illogical for Singh to travel to India nearly every year from 1993 to 2003 if he was in danger.  The IJ erred in

failing to state reasons for rejecting Singh's explanation of his occasional visits to India during the years when he lived in Austria. Singh testified that he stayed away from India for more than five years after the 1987 beating. He risked returning only after his mother wrote to him that she was dying. Return trips to visit a dying parent do not support an adverse credibility finding. *Smolniakova v. Gonzales*, 422 F.3d 1037, 1050 (9th Cir. 2005). While visiting his mother, Singh discovered that he could travel to his home town without being harassed by police. Singh was not engaged in political activity during those visits and claimed he was lulled into a false sense of security.[3] After returning permanently to India, Singh renewed his involvement with the Sikh separatist movement and once again came to the attention of police. Within months, he was arrested and beaten. Singh's explanation for his return visits is credible, and the IJ erred in not offering reasons for rejecting it. *See Soto-Olarte*, 555 F.3d at 1091.

---

[3]The dissent makes much of the fact that Singh's family remained in India during this period. Such evidence is "manifestly irrelevant" unless the family members are similarly situated to the petitioner. *Jahed v. INS*, 356 F.3d 991, 1001 (9th Cir. 2004); *accord Kumar v. Gonzales*, 444 F.3d 1043, 1055 (9th Cir. 2006) (irrelevant that petitioner's family remained in India unharmed, because they were not "similarly situated"). Singh's asylum application is based on his political activity in a separatist movement that advocates the creation of an independent Sikh state. Nothing in the record suggests that his wife and two small sons were involved in this political movement. Because they were not similarly situated, their continued presence in India is not relevant to our analysis.

### e. Singh's misstatements to border authorities and the train tickets from Austria

The BIA affirmed the IJ's adverse credibility finding because Singh told border officers that he was an Austrian citizen and carried a train ticket that seemed to contradict his testimony about how he came to the United States.

Singh testified that an agent gave him a fake Austrian passport and a train ticket from Vienna to Madrid to support his assumed identity. Even though Singh presented false travel documents to U.S. customs officials, he immediately identified himself by his true name and stated that he was seeking asylum when he was apprehended for entering the country illegally.

As we stated in *Paramasamy v. Ashcroft*, 295 F.3d 1047, 1054 (9th Cir. 2002), "the use of false documents for travel is not a proper basis for an adverse credibility determination." Further, we have always recognized the distinction between "false statements made to establish the critical elements of the asylum claim from false statements made to evade INS officials." *Akinmade v. INS*, 196 F.3d 951, 956 (9th Cir. 1999). Therefore, the fake passport and false train ticket are not substantial evidence to support an adverse credibility finding.

### f. The 2004 and 2005 beatings

Finally, the BIA affirmed the IJ's conclusion that Singh's testimony about

the beatings in 2004 and 2005 was "vague, lacking in detail, and without any corroboration." But the BIA cites no rationale for this conclusion. Singh testified to the specific dates of his arrests, the events that precipitated them, the approximate number of people arrested, the length of his detention during each encounter, the number of officers who engaged in the persecution, the ways in which he was physically mistreated, the instruments used to beat him, and the warnings he was given before his release. His testimony was neither vague nor lacking in detail. Indeed, it was rather specific. Substantial evidence does not therefore support an adverse credibility finding on this ground.

### g. The evidence supporting Singh's claim

Immigration courts should not "selectively consider evidence, ignoring that evidence that corroborates an alien's claims . . ." *Shrestha*, 590 F.3d at 1040. The IJ and BIA ignored significant evidence that favored finding Singh credible. Neither the IJ's nor the BIA's opinions mention the signed and sealed letter from Simranjit Singh Mann, the leader of the Sikh separatist movement, attesting to Singh's position in the movement and verifying Singh's continued risk of persecution in India. Moreover, neither the IJ nor the BIA addressed the country conditions report. The IJ and the BIA thus erred in not considering this evidence in support of Singh's claim.

9

### h. Conclusion

In sum, substantial evidence does not support the IJ's adverse credibility determination. "[W]hen each of the IJ's or BIA's proffered reasons for an adverse credibility finding fails, we must accept a petitioner's testimony as credible." *Kaur*, 379 F.3d at 890.

We therefore GRANT the petition and REMAND to the BIA for further proceedings to determine whether, accepting Singh's testimony as credible, he is eligible for relief. *See Singh v. Gonzales*, 439 F.3d 1100, 1113 (9th Cir. 2006).

**PETITION GRANTED AND REMANDED**