NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 19 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

BALJIT SINGH MALHI,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

No. 23-17

Agency No.
A205-585-946

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 6, 2023
San Francisco, California

Before: S.R. THOMAS, BRESS, and JOHNSTONE, Circuit Judges.
Dissent by BRESS, Circuit Judge.

Baljit Singh Malhi, a native and citizen of India, petitions for review of a

Board of Immigration Appeals ("BIA") decision dismissing his appeal of an order

from an Immigration Judge ("IJ") (collectively, the "Agency") denying his

applications for asylum, withholding of removal, and relief under the Convention

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252(a)(1). We grant the petition and remand to the BIA to remand to the IJ for additional fact-finding as to Malhi's credibility under 8 U.S.C. §§ 1158(b)(1)(B)(iii), 1231(b)(3)(c), 1229a(c)(4)(C).

Where, as here, the BIA cites *Matter of Burbano*, 20 I. & N. Dec. 872 (B.I.A. 1994) and "provides its own review of the evidence and law, we review both the IJ's and the BIA's decisions." *Ali v. Holder*, 637 F.3d 1025, 1028 (9th Cir. 2011). We review credibility determinations for substantial evidence. *Barseghyan v. Garland*, 39 F.4th 1138, 1142 (9th Cir. 2022)). However, the Agency commits "legal error[]" when it "fail[s] to give specific, cogent reasons for rejecting . . . plausible explanations." *Munyuh v. Garland*, 11 F.4th 750, 764 (9th Cir. 2021).

1. The REAL ID Act requires credibility determinations to be made "[c]onsidering the totality of the circumstances, and all relevant factors." 8 U.S.C. §§ 1158(b)(1)(B)(iii), 1229a(c)(4)(C). If the Agency relies on inconsistencies in making its adverse credibility determination, they must be "something more than '[t]rivial inconsistencies that under the total circumstances have no bearing on a petitioner's veracity.'" *Ren v. Holder*, 648 F.3d 1079, 1085 (9th Cir. 2011) (quoting *Shrestha v. Holder*, 590 F.3d 1034, 1044 (9th Cir. 2010)). Further, the Agency must provide (1) "the noncitizen with an opportunity to explain each inconsistency, although this opportunity can occur through direct or cross-

2                                                                              23-17

examination"; and (2) "a 'specific and cogent reason for rejecting' [reasonable and plausible] explanation[s]." *Barseghyan*, 39 F.4th at 1143 (quoting *Rizk v. Holder*, 629 F.3d 1083, 1088 (9th Cir. 2011), *overruled in part on other grounds by Alam v. Garland*, 11 F.4th 1133 (9th Cir. 2021) (en banc)). We require these steps "[i]n order to . . . make [substantial evidence] review possible." *Ren*, 648 F.3d at 1085; *see also Shrestha*, 590 F.3d at 1042 ("[T]he REAL ID Act does not give a blank check to the IJ enabling him or her to insulate an adverse credibility determination from our review of the reasonableness of that determination."). If the Agency fails to do either, the inconsistency may not serve "as substantial evidence to support the [Agency's] adverse credibility finding." *Soto-Olarte v. Holder*, 555 F.3d 1089, 1091 (9th Cir. 2009).

Malhi is Sikh and a member of the Mann Party. The Agency considered four instances when Malhi relayed why he came to the United States. Malhi consistently stated he had been attacked and threatened because of his membership in the Mann Party. In particular, Malhi detailed an attack in June 2012 which led to him being hospitalized for several days. Malhi also provided a letter from Jalandhar Civil Hospital stating he was treated there in June 2012. Malhi further stated he had been threatened by the Congress Party once through a letter and several times through phone calls. Although the Government sought and received an adverse credibility finding, it did not contradict any of these statements of fact

before the IJ.

Overall, we note that Malhi's testimony was "overwhelmingly consistent with . . . his prior statements" and the documentary evidence he provided. *Ren*, 648 F.3d at 1089. Indeed, the IJ appeared to credit Malhi's statements that he was attacked, finding only that it was "unclear" who attacked him. As we have consistently held, the Agency's adverse credibility finding must be made based on "the totality of the circumstances" and the Agency may "not cherry pick solely facts favoring an adverse credibility determination while ignoring facts that undermine that result." *Shrestha*, 590 F.3d at 1040. The Agency relied on three potential inconsistencies between Malhi's four statements in making its adverse credibility determination. We consider each one below.

*First*, as to the number of attacks, in Malhi's statement to border patrol, he answered affirmatively to two questions about whether his persecutors threatened his life and attacked him by caning, concluding "I have been attacked twice." In his credible fear interview and testimony, Malhi stated he had been attacked once and had also received a threatening letter.

On cross-examination, the Government asked about this potential inconsistency. Malhi explained that because he had been nervous, he incorrectly stated that there had been two attacks rather than distinguishing between the two primary events (the attack and the threat) that caused him to flee to the United

States. *See Shrestha*, 590 F.3d at 1044–45 ("[T]he analysis on review . . . should recognize that the normal limits of human understanding and memory may make some inconsistencies or lack of recall present in any witness's case."). Malhi's statements were not clearly inconsistent because the series of questions may have caused him to count both the January 2013 threatening letter (in response to the threat question) and the June 2012 attack (in response to the caning question). *See Barseghyan*, 39 F.4th at 1143.

Nevertheless, the IJ stated only that Malhi "was not able to clarify" the potential inconsistency. Even assuming the statements were inconsistent, this alone is not a specific and cogent reason for rejecting Malhi's explanation, and thus the IJ erred in relying on this potential inconsistency. *Id.* at 1145; *Lai v. Holder*, 773 F.3d 966, 973 (9th Cir. 2014).

*Second*, as to the identity of Malhi's attackers, in his credible fear interview, Malhi stated he was attacked by the Congress Party.[1] In his declaration and testimony, he stated he was attacked by the Badal Party and Bharatiya Janata Party ("BJP"). His declaration addressed that discrepancy, explaining that he had been nervous, terrified, and not feeling well at his credible fear interview, that he had

---

[1] In his border patrol statement, Malhi stated he was "in danger from the Congress party." He did not specifically state who attacked him, so we do not treat his later statements as inconsistent with his border patrol statement. *See Barseghyan*, 39 F.4th at 1143.

23-17

memory issues associated with what occurred in India, and that recalling those events caused him to become stressed and confused. On cross-examination, Malhi further explained that he originally named the Congress Party because they had threatened him after the attack and continued to threaten his family in India, neither of which were disputed. The IJ relied on this inconsistency, stating only that it was "unclear" who attacked Malhi in June 2012, that he was "unable to reasonably explain" the inconsistency, and that his explanation was "unpersuasive."

The IJ erred in considering Malhi's explanations for this inconsistency. The IJ failed to consider the explanations Malhi provided in his declaration regarding the inconsistencies. *See Soto-Olarte*, 555 F.3d at 1091. Further, in his testimony, Malhi provided a reasonable explanation for failing to mention the Badal Party and BJP at his initial interviews, *i.e.*, that he was nervous and more afraid of the Congress Party given the multiple threats they had sent him and his family. The IJ provided only summary reasons for rejecting these explanations, and we have rejected such reasons as failing to meet the specific and cogent standard. *Barseghyan*, 39 F.4th at 1145; *Lai*, 773 F.3d at 973.

*Third*, as to how Malhi identified his attackers, in his credible fear interview, Malhi stated his uncle saw his attackers' car and identified it as belonging to the Congress Party. In his testimony and declaration, he stated he saw the car and

6                                                                    23-17

identified it as belonging to the Badal Party and BJP. Malhi was never given an opportunity to explain this potential inconsistency, but the IJ nonetheless relied on it. That was legal error. *Barseghyan*, 39 F.4th at 1143.

Because the Agency failed to consider the overall consistency of Malhi's statements and committed legal error in its consideration of each of the three potential inconsistencies it relied on, substantial evidence does not support the Agency's adverse credibility finding. *See Soto-Olarte*, 555 F.3d at 1091. We therefore remand to the BIA to remand to the IJ for additional fact-finding as to the adverse credibility determination and Malhi's relief applications as necessary.

2. Because we grant the petition as to the adverse credibility finding, we also find that the BIA erred in deeming Malhi's CAT claims waived to the extent the IJ rejected those claims based on an erroneous adverse credibility determination. *Cf. Sagaydak v. Gonzales*, 405 F.3d 1035, 1040 (9th Cir. 2005). The IJ's reasoning on this point was ambiguous. In considering Malhi's CAT claims, the IJ found the harm Malhi suffered did not rise to the level of torture. It is not clear whether the IJ considered his testimony in making this finding as the IJ initially stated his testimony would be given "no weight." On remand, Malhi's CAT claims should be reconsidered to the extent the IJ based the denial of them on the adverse credibility determination.

**PETITION GRANTED.**

*Malhi v. Garland*, No. 23-17

BRESS, Circuit Judge, dissenting:

I respectfully dissent from the decision to grant the petition for review. The majority's assertions that the BIA and IJ committed legal error are unfounded.

1.    Substantial evidence easily supports the IJ's adverse credibility determination. The IJ relied on two core inconsistencies in Malhi's account as the basis for finding Malhi not credible. First, Malhi stated in his sworn border statement that he had been "attacked twice" in India, but he stated in his credible fear interview, hearing testimony, and written declaration that he had been attacked once and had also received a threatening letter. Second, Malhi stated in his credible fear interview that he was attacked by members of the Congress Party, but in his merits hearing and written declaration he said that he was attacked by members of the BJP and Badal parties. Malhi also changed his story as to how he recognized his assailants. Malhi initially asserted that his uncle had seen his attackers' car and noted that it belonged to the Congress Party, but Malhi later asserted that he had personally seen Badal and BJP logos on his attackers' car.

These were not trivial inconsistencies. Instead, they went to the very foundation of the persecution claim: who attacked Malhi, how many times, and how he was able to recognize the perpetrators. These points formed "the crux of his application for relief." *Shrestha v. Holder*, 590 F.3d 1034, 1047 (9th Cir. 2010); *see*

1

*also id.* at 1046–47 ("Although inconsistencies no longer need to go to the heart of the petitioner's claim, when an inconsistency is at the heart of the claim it doubtless is of great weight."). Here, "[i]n light of the total circumstances, [Malhi's] inability to consistently describe the underlying events that gave rise to his fear was an important factor that could be relied upon by the IJ in making an adverse credibility determination." *Id.* at 1047. The majority's assertion that Malhi's testimony was "overwhelmingly consistent" with his prior statements is simply inaccurate.

The majority's reasons for granting the petition, meanwhile, do not withstand scrutiny. *First*, the majority says that Malhi's statement that he was attacked twice was not clearly inconsistent with his later statements that he was attacked once because the series of questions during his border interview could have caused Malhi to conflate the June 2012 attack and the January 2013 threatening letter. But Malhi has never argued either here or before the agency that he was confused by the nature or sequencing of the questioning at the border. Nor does the record support that conclusion, much less compel it. The border officer asked Malhi "Did they threaten your life?" to which Malhi replied "Yes, they tried to cane me." The border officer then asked, "Did they succeed in caning you?" to which Malhi replied "Yes, I have been attacked twice." The clear import of Malhi's response is that he was attacked on two occasions. The majority hypothesizes that the "series of questions may have

2

caused" Malhi to confuse attacks with threats, but that speculation hardly justifies setting aside the IJ's adverse credibility determination.

*Second*, the majority concludes that the IJ did not give sufficiently "specific and cogent" reasons for rejecting Malhi's explanations about the inconsistencies in his account. But the IJ need only provide such reasoning if Malhi's explanations were "reasonable and plausible." *Barseghyan v. Garland*, 39 F.4th 1138, 1143 (9th Cir. 2022). It is doubtful Malhi's explanations meet that standard. Malhi said he only mentioned the Congress Party in his credible fear interview because they "created more problem[s] for me." But this makes little sense when Malhi testified that it was the BJP and Badal party members that physically attacked him. And while the majority focuses on how Malhi said the Congress Party threatened him, in fact Malhi said that the threats "were from all the three parties," again undermining his assertion that the Congress Party created more problems for him. In addition, though Malhi's nervousness could reasonably contribute to Malhi making some misstatements in his border statement and credible fear interview, Malhi has provided no plausible explanation as to how his nerves led him to make critical misstatements about the basic nature of his persecution: how many times he was attacked, who attacked him, and how he knew who his attackers were.

But even assuming the IJ was required to provide "specific and cogent" reasons for rejecting Malhi's explanations, the IJ did so. The IJ specifically noted

3

that Malhi was "able to identify the symbols for each individual party, including the Congress [P]arty as an open palm, and distinguish this from the symbol for Badal and BJP." Because Malhi could tell each party from the others, it was unclear why he would be inconsistent about who attacked him. The IJ also specifically acknowledged Malhi's argument that he was nervous. But the IJ found Malhi's explanations "unpersuasive" because Malhi "was not able to clarify" or "reasonably explain" the inconsistencies in his accounts. That is a more than fair reaction to Malhi's scant testimony, and the record certainly does not compel the opposite conclusion. The IJ's reasoning was more than sufficient. *See Aguilar Fermin v. Barr*, 958 F.3d 887, 892 (9th Cir. 2020) (upholding adverse credibility determination where IJ found "unconvincing" petitioner's explanation that she had misspoken about receiving personal threats because she was "nervous" and had "forgotten").

Nor, as the majority suggests, did the IJ commit legal error by failing to consider Malhi's statement in his written declaration that, when he thinks about events that happened in India, he starts "feeling very uncomfortable, scared, and tense, and [his] memory starts to blur." To start, it is not clear that Malhi offered this statement as an explanation for either of the two main inconsistencies that the IJ relied upon in making her adverse credibility determination. Malhi stated in his declaration that he believed his fear and confusion rationalized "why [he] was not as complete in explaining the threats as [he] should have been during [the] interview,

4

and only mentioned the one threatening letter." Malhi did not indicate that these factors led him to misspeak regarding the number of times he was attacked or the identity of his attackers. But in any event, Malhi stated in his merits hearing that his inconsistencies on those points were due to nervousness and depression, and those explanations were not meaningfully different from the ones he offered in his declaration. The IJ not referencing the written declaration is thus of no moment. *See Rizk v. Holder*, 629 F.3d 1083, 1091 (9th Cir. 2011) ("No express, point-by-point rejection of [petitioner's] explanations was necessary.").

*Third*, the majority claims that the IJ did not give Malhi the opportunity to explain the inconsistency in how he recognized his attackers. But Malhi's vacillation as to how he knew who was attacking him was part and parcel of his broader inconsistency regarding his attackers' identity, which Malhi had ample opportunity to clarify on cross-examination. The IJ was permitted to reference a particular aspect of that inconsistency when describing the totality of the circumstances motivating her adverse credibility determination.

In short, Malhi provided inconsistent testimony on bedrock aspects of his claim of persecution. We should let the adverse credibility determination stand.

2.    As the BIA found, Malhi forfeited his CAT claim by failing to object to the IJ's denial of CAT relief before the BIA. *See* 8 U.S.C. § 1252(d)(1). The IJ's denial of CAT relief did not depend on her adverse credibility finding because the IJ

also concluded that "the harm suffered by [Malhi] in his case does not arise to the level of torture as contemplated by the [INA] and the definition of torture." Yet, Malhi's brief to the BIA challenged only the adverse credibility finding and did not address the IJ's separate determination that Malhi was otherwise ineligible for CAT relief. This alone is grounds for denying CAT relief here. But I would also do so because the IJ's adverse credibility finding is amply supported.

In sum, I would deny the petition in full.